**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Muhammad Jalal Deen AKBAR, aka
Gerald Leland Marity,
Defendant-Appellant.**

No. 82–1244.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 7, 1982.

Decided Jan. 31, 1983.

Certiorari Denied May 31, 1983.
See 103 S.Ct. 2433.

Karen R. Smith, Sr. Deputy Federal Public Defender, Carl E. Douglas, Asst. Fed. Public Defender, Los Angeles, Cal., for defendant-appellant.

Eric L. Dobberteen, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before WRIGHT, KENNEDY, and BOOCHEVER, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Akbar was convicted of one count of air piracy, in connection with the April 9, 1980

hijacking of a commercial airplane from Ontario, California to Havana, Cuba. Seven crew members were on board during the flight. Akbar surrendered to Cuban officials in Havana and reappeared in Miami on November 18, 1981.

The hijacker was described by crew members as a black man with a mole on the left side of his nose. The descriptions of his height and weight varied significantly. Four of the seven crew members who viewed a photospread five weeks after the hijacking identified Akbar as the hijacker.

On December 16, 1981, 20 months after the hijacking, Akbar was arrested near Ontario, California. A United States passport with four Cuban immigration stamps was found in his possession, along with airline tickets, including one for a Cuban airline.

At trial, four government witnesses identified Akbar as the hijacker. Circumstantial evidence also linked him to the crime: he owned the type of gun used, lived and worked in Ontario, California, and belonged to the Black Muslims. The last was relevant because, during the flight, the hijacker

said, "I'm one of Muhammed's." Akbar did not testify.

The Cuban stamps in Akbar's passport were admitted as evidence that the passport was stamped in Cuba while in his possession. The defendant argues that the slight probative value of the stamps was outweighed by their prejudicial effect.

■ A district judge's ruling on the admission of relevant evidence will be overturned only for an abuse of discretion. *United States v. Kearney,* 560 F.2d 1358, 1369 (9th Cir.), *cert. denied,* 434 U.S. 971, 98 S.Ct. 522, 54 L.Ed.2d 460 (1977). There was no abuse here.

■ The trial jury was not administered in any normal or approved manner, with the judge's inquiries directed to the foreperson of the jury. During its deliberations, the jury sent the judge an ambiguous note asking for "[t]ranscripts of all witnesses of defendant." Seeking clarification, the judge questioned all jurors as to what testimony was desired and by whom.[1]

The questioning concerned only the request for repetition of testimony, although some jurors' responses apparently referred

---

1. Following colloquy with counsel with reference to which witnesses might be involved, the district judge made a statement, then posed the following questions to the jurors:

THE COURT: I don't know, frankly, how we can, without spending three or four hours reading it to ourselves, that is, amongst the lawyers and the court, pick out the particular testimony that relates only to identification either in court or outside of court of these witnesses. I know of no other way of doing it except by reading all of their testimony. Is that what you want, all of you jurors? I assume it is, if you don't tell me to the contrary.

JUROR NO. 7: I want it.

THE COURT: All those who want this, raise your hands.

JUROR NO. 7: I want it.

THE COURT: Well, who wants it and who doesn't want it? Come on, now, all those who want this testimony that is so intermingled with other testimony of identification, raise your hands.

All right. We have got one, two, three, four, five. Now, what about you other seven? What do you want? If you don't want that testimony, what is it you want? I will go one by one: Juror No. 1, what is it you want?

JUROR NO. 1: I don't want anything. I already have—

THE COURT: Juror No. 2, what is it you want?

JUROR NO. 2: The descriptions.

THE COURT: I didn't hear that.

MR. DOBBERTEEN: The description, your Honor.

THE COURT: "If we had the" what? Put a microphone in front of her.

JUROR NO. 2: A description, identification.

THE COURT: Read it back to me.

(The record was read.)

MR. DOBBERTEEN: Your Honor—

THE COURT: Sit down. Wait until I finish. Juror No. 3, what is it you wanted? The testimony read so we get all the descriptions that these four witnesses gave whether in court or out of court?

JUROR NO. 3: Yes. It would make it very clear.

THE COURT: What is it you want, Juror No. 4?

JUROR NO. 4: I believe that for the sake of some that we need to find out what the witnesses had for the identification of the person.

THE COURT: So that means reading the whole testimony. I don't know how we can pick it out.

to the jury's split on the issue of guilt. The jurors seemed to indicate that 11 of them had decided that the defendant was guilty with one still undecided. The identity of the doubtful juror also was revealed.

The judge determined that the single juror wished some identification testimony reread. Other jurors agreed that she should hear it. There followed some questions to the doubtful juror about her need for a rereading of the testimony.

The court reporter was then directed to read the desired testimony and the jurors were supplied with paper and pencil which they had requested. That began some time before noon and ended at 3:30 p.m. The jury retired to deliberate and arrived at a verdict at 4:55 p.m.

The apparent disclosure of the jury's division was unsolicited. The judge's questioning related to a collateral issue, in contrast with the facts in *Brasfield v. United States,* 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926). His inquiry as to the numerical division was not intended to reveal the jury's split on the issue of conviction. *See Carlton v. United States,* 395 F.2d 10, 11 (9th Cir.1968), *cert. denied,* 393 U.S. 1030, 89 S.Ct. 642, 21 L.Ed.2d 574 (1969). Moreover, the judge's questioning did not create a coercive atmosphere, particularly since the requested material was read before the jury resumed its deliberations.

The judge's dialogue with the jury was not reversible error in this case. However, under other circumstances, when questioning individual jurors has created a coercive atmosphere, this court will find it very difficult to affirm a resultant conviction.

The judgment is AFFIRMED.

KENNEDY, Circuit Judge, concurring:

I concur in the judgment. I do not believe the serious deficiencies in the interro-

JUROR NO. 4: Sure. If that's the only way.
THE COURT: We don't have a transcript. Juror No. 5?
JUROR NO. 5: Yes.
THE COURT: All right. Six?
JUROR NO. 6: I don't need it personally, but they do want the testimony.
THE COURT: I know seven wants it. Eight?
JUROR NO. 8: No, I don't need it.
THE COURT: Nine?
JUROR NO. 9: No.
THE COURT: Ten?
JUROR NO. 10: No.
THE COURT: Eleven?
JUROR NO. 11: Don't need it.
THE COURT: Twelve?
JUROR NO. 12: No.
THE COURT: You don't need it. Now we have got one, two, three, four, five, six, seven, eight—one, two, three, four, five, six, seven say they don't need it. Five say they do need it. Can't you resolve that when you go back to the jury room and think about it?
JUROR NO. 8: It's only one person that's—all 11, I think, are for it. One is against is. So we can't come up with an agreement.
THE COURT: Eleven want the testimony read?
JUROR NO. 8: No. Eleven has decided. One hasn't.
THE COURT: Well, let me ask all of you eleven how you feel, if you need it, if you think that it's only fair that this one juror, whoever it may be, should have it. Have you anything against it?

JUROR NO. 10: No, we are not against it if she wants it.
THE COURT: And that juror, I take it, is No. 7 that wants it.
JUROR NO. 7: Yes.
JUROR NO. 8: Right.
THE COURT: All right. Juror No. 7, then, I will go back to you. Do you think you really need it to make a decision or can you go back and sit down with your fellow jurors, discuss it, go over it, and finish your deliberations without our reading all of this testimony? Or do you feel you want it?
JUROR NO. 7: Your Honor, I feel that in order to make a fair decision that—a point that I brought up and the others don't quite agree on that—
THE COURT: Well, I don't want to know what you brought up. But you want the testimony read that covers descriptions?
JUROR NO. 7: I would like to have it read, at least three of the witnesses.
THE COURT: Well, at least three. But if three, why not four? That's what I don't understand.
JUROR NO. 7: Four is fine with me, but with three—well, four is fine, too, but I want at least three.
THE COURT: I think the only way we can solve it is to read the whole testimony of these four witnesses.
Ms. Reporter, clear your throat, have a seat at the witness stand, and start reading.

gation procedure followed by the trial judge in this case warrant reversal. The substantial time that it took to read the testimony, and the further deliberations, persuade me that any coercive pressure was eliminated and that the jury's verdict was freely reached. I write separately because the case comes close to presenting reversible error and such interrogations should not be repeated.

As the questioning proceeded, juror-by-juror, it should have become increasingly apparent that the jurors took different views as to the necessity for hearing the additional evidence. An individual poll in this circumstance came perilously close to intruding upon the jurors' deliberations. The error in procedure was compounded when the court continued to question juror No. 7. The court's objective in inquiring which juror wanted the testimony is puzzling. In any event, it does not justify a series of questions each of which tended to isolate the requesting juror.