Gregorio JIMENEZ, Petitioner–Appellant,

v.

E.R. MYERS, Warden; Attorney General of California, Respondents–Appellees.

No. 91–56476.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 2, 1993.

Decided Dec. 8, 1993.

Howard C. Cohen, Appellate Defenders, Inc., San Diego, CA, for petitioner-appellant.

Peggy S. Ruffra, Deputy Atty. Gen., Los Angeles, CA, for respondents-appellees.

Before: BROWNING, HUG, and KOZINSKI, Circuit Judges.

PER CURIAM:

Gregorio Jimenez appeals the district court's denial of his petition for a writ of habeas corpus based on the claim that the state trial judge coerced the jury into rendering a guilty verdict in violation of Jimenez's Fourteenth Amendment right to due process.

## I.

Jimenez fired two shots through the front door of his cousin's house after she ran inside following an argument. He was convicted of attempted murder. At trial he claimed he intended only to frighten his cousin and had not fired until he believed she had moved away from the door. In an effort to gain an acquittal, Jimenez and his counsel made a "tactical decision ... not to seek any lesser included offenses or submit instructions thereon for the jury's consideration." In addition to describing the elements of attempted murder and giving other standard charges, the court instructed the jury that each juror should decide the case after discussion, but without succumbing to the pressure of the majority.[1]

After four and three quarter hours of deliberations, the jury sent the judge a note stating, "We are unable to reach a verdict and feel strongly that we would not be able to reach a verdict." Defense counsel took the position that "[i]n a case like this with this type of emotions and feelings, if they're deadlocked now, they're rarely going to change." The court called in the jury and

---

1. The court stated,
   Both the people and the defendant are entitled to the individual opinion of each juror.
   It is the duty of each of you to consider the evidence for the purpose of arriving at a verdict if you can do so. Each of you must decide the case for yourself, but should do so only after a discussion of the evidence and instructions with the other jurors.

   You should not hesitate to change an opinion if you are convinced it is erroneous. However, you should not be influenced to decide any question in a particular way because a majority of the jurors, or any of them, favor such a decision.

engaged in the following exchange with the foreperson:

THE COURT: What I would like to know, how many votes have been taken?

FOREPERSON: Five or six.

THE COURT: Without telling me which direction, just numerically, how did it start, and what was it on the last?

FOREPERSON: [I will] Try to tell you numerically without [indicating] either way. To the best of my recollection, it started out about maybe seven to five, eight to four. Went to nine to three. All right. To back up, this morning, nine, two, and one.... This afternoon though, nine to three.

\* \* \* \* \* \*

THE COURT: All right. So you did have—how about in between, nine-two and one and then nine-three, has there been any movement one way or the other?

FOREPERSON: Nine-one-two, I would say at this point. And yes, there has been some movement in one direction.

THE COURT: Okay. Well, that's what's important to me because of the nature of the type of case. I want to find out that there has been movement.

After a three-day weekend, the jury returned to its deliberations. Three hours later, the jury sent another note to the court stating, "We are at an impasse and request further direction." The prosecutor responded, "If the impasse means that they're once again hopelessly hung, perhaps now would be the time to accept that and set it for retrial." Defense counsel agreed, "Any further pressure upon [the jury] would be prejudicial to the defendant." The court declared it would bring the jurors back to the courtroom to "see if there's been any substantial movement at all. If there has not been, then I'll have to declare a mistrial."

The court's questions to the jury and the foreperson's responses were as follows:

THE COURT: Okay. Now last Friday I inquired of you as to whether or not there had been any movement by the jury. So I'll ask you that same question again with the understanding, all I want is numbers, not which direction you're at. How many votes have you taken since last Friday?

FOREPERSON: Two or three. Two.

COURT: Two more?

FOREPERSON: Un-huh.

COURT: What's the latest?

FOREPERSON: Eleven-one.

COURT: So there has been, then, substantial movement since the last time.

FOREPERSON: Yes.

THE COURT: All right. Due to the fact we have had that type of movement, I would request, then, to finish the rest of today and see where we are at that point in time. All right? Okay.

Defense counsel objected and asked the court to inquire whether further deliberation would be fruitful. Counsel explained, "if there's one person in there that's for not guilty, it's putting them on a tremendous amount of pressure, and I don't think they should be subjected to that pressure." The court concluded the hold-out juror would not be subjected to "undue pressure" in light of the substantial change in the vote within the jury in the course of their deliberations and because the jury had been asked to deliberate "the rest of today"—about two more hours. The jury returned a guilty verdict after an hour and forty-eight minutes of additional deliberation.

Jimenez raised the issue of jury coercion without success on appeal to the California Court of Appeal and in a petition for review to the California Supreme Court. Jimenez then filed this petition for a writ of habeas corpus.

The magistrate judge recommended the writ be granted on the ground the state trial judge had coerced the hold-out juror into joining in the guilty verdict. The magistrate judge noted that the state trial judge twice polled the jury about the jury's numerical division on the merits after the jury had announced an impasse; that the prosecution and defense agreed to accept a deadlock after the jury's second note, but the court refused; and that the judge's comments to the jury strongly implied the jury's movement from an initial division of seven to five to a division of eleven to one should continue

toward unanimity. The district court disagreed, stating, inter alia, that the hold-out juror would not have felt coerced because he or she would have known the judge would declare a mistrial at the end of the day.

## II.

█ Whether the trial judge coerced the jury into rendering a guilty verdict is a mixed question of law and fact "requiring the application of legal principles to the historical facts." *Hamilton v. Vasquez*, 882 F.2d 1469, 1471 (9th Cir.1989). Accordingly, our review of the "legal weight" given to the facts is de novo. *See Sumner v. Mata*, 455 U.S. 591, 597 & n. 10, 102 S.Ct. 1303, 1306–07 & n. 10, 71 L.Ed.2d 480 (1982); *Hamilton*, 882 F.2d at 1471; *Torrey v. Estelle*, 842 F.2d 234, 235 (9th Cir.1988). We consider whether the court's actions were coercive under a totality of the circumstances test. *See United States v. Seawell*, 550 F.2d 1159, 1163 (9th Cir.1977) ("the general test of whether a supplemental jury instruction is in error is to consider all the circumstances to determine if the instruction was coercive"); *Marsh v. Cupp*, 536 F.2d 1287, 1290 (9th Cir.1976) (test for jury coercion is " 'whether in its context and under all the circumstances of this case the statement was coercive' ").[2]

█ Although this case does not specifically involve review of an *Allen* charge, *see Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), clearly our *Allen* charge cases are relevant. They consider four factors in determining whether there has been undue coercion:

1) the form of the supplemental instruction;

2) the period of deliberations following the instruction;

3) the total time of deliberations;

4) any indicia of coerciveness or pressure. *United States v. Wauneka*, 842 F.2d 1083, 1088 (9th Cir.1988). We consider the same factors in this case to determine whether, under the totality of the circumstances, the trial judge coerced the jury. We recognize, however, that coercion must be more severe to constitute a violation of due process than to invoke our supervisory powers. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 642–43, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974).

█ 1) *The Form of the Exchange Between Judge and Jury*—The jury twice informed the trial judge it had reached an impasse. The trial judge twice asked the jury for their numerical split on the merits, and both times sent the jury back for further deliberations on the stated ground there had been movement toward unanimity. The court indicated its approval of the movement and expressed the hope it would continue. The form of the exchange placed pressure first on the three hold-out jurors, and finally on the single hold-out juror, to join the others in the movement toward unanimity.

█ Because an *Allen* charge carries the potential for jury coercion, we require a trial judge using the charge to instruct jurors not to surrender their sincere convictions when they reassess their positions. *United States v. Bonam*, 772 F.2d 1449, 1451 (9th Cir.1985); *United States v. Mason*, 658 F.2d 1263, 1268 (9th Cir.1981) ("the integrity of individual conscience in the jury deliberation process must not be compromised"). Although the trial judge in this case placed pressure on the hold-out jurors to reconsider their views, he did not remind them no juror "should be influenced to decide any question in a particular way because a majority of the jurors . . .

---

2. Other circuits apply the same test. *E.g., Williams v. Parke*, 741 F.2d 847, 850 (6th Cir. 1984) (totality of circumstances); *Cornell v. Iowa*, 628 F.2d 1044, 1048 (8th Cir.1980) (same); *Ellis v. Reed*, 596 F.2d 1195, 1197–1200 (4th Cir.1979) (same). The totality of the circumstances standard had its origin in *Jenkins v. United States*, 380 U.S. 445, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965). In reversing a conviction obtained after the judge told the jury it was required to reach a verdict, the Supreme Court stated, "Upon review of the record, we conclude

that in its context and under all the circumstances the judge's statement had the coercive effect attributed to it." *Id.* at 446, 85 S.Ct. at 1060. *See Lowenfield v. Phelps*, 484 U.S. 231, 237, 108 S.Ct. 546 (1988) ("Our review of petitioner's contention that the jury was improperly coerced requires that we consider the supplemental charge given by the trial court 'in its context and under all the circumstances.' ") (quoting *Jenkins* ); *Seawell*, 550 F.2d at 1163 (citing *Jenkins* ); *Marsh*, 536 F.2d at 1290 & n. 6 (same).

favor such a decision."[3] "It is essential [in cases where the trial judge's actions and comments place pressure on hold-out jurors] to remind jurors of their duty and obligation not to surrender conscientiously held beliefs simply to secure a verdict for either party." *Mason,* 658 F.2d at 1268.

■ 2) *Period of Deliberation After the Exchange*—The jury reached its verdict one hour and forty-eight minutes after returning to deliberations following the second note.[4] This period does not raise an inference of coercion. *Compare Bonam,* 772 F.2d at 1451 (no inference of coercion for verdict delivered an hour and a half after *Allen* charge where issue was simple and jury told it could take as much time as it needed), *with United States v. Contreras,* 463 F.2d 773, 774 (9th Cir.1972) (reversing a conviction rendered thirty-five minutes after an *Allen* charge because the instruction was premature and coercive).

■ 3) *Total Time of Deliberations*—The jury deliberated a total of nine and a half hours. This was not "so disproportionate to the task before the jury as to raise an inference" of coercion. *United States v. Beattie,* 613 F.2d 762, 766 (9th Cir.1980).

■ 4) *Indicia of Coerciveness or Pressure*—The trial judge knew the jury was divided nine to three when he told them to continue their deliberations after their initial impasse; he knew they were divided eleven to one after the second impasse. The trial judge, as we have already said, failed to admonish them not to surrender their sincere convictions. The fact that the court asked the jury to continue to deliberate only for the balance of the day was not enough to remove the pressure on the hold-out juror. The court made clear it approved of the jury's movement toward unanimity and indicated "that type of movement" should continue, but did not suggest to the jury in any way that the court would declare a mistrial if no verdict was returned by the end of the day. After the second impasse, both the prosecutor and the defense believed a new trial was required.

■ This case is analogous to *Jones v. Norvell,* 472 F.2d 1185 (6th Cir.1973). The court vacated a state conviction after the trial judge learned the jury was deadlocked eleven to one, informed the jury it was their duty to reach a verdict, and told the jury to try to make progress in their deliberations. The jury returned a guilty verdict almost immediately. The Sixth Circuit said,

> the facts recited above involved the invasion of jury secrecy, the identification of a deadlocked jury's majority-minority count, a coercive jury charge, and the speedy return of a verdict subsequent to the charge. These facts constitute a totality of circumstances which violate the constitutional rights of appellants to a fair and impartial jury trial under the Sixth and Fourteenth Amendments.

*Id.* at 1186 (citations omitted). Although in the present case the jury was not told it had a duty to reach a verdict, the judge's comments, twice repeated, clearly conveyed the message that the hold-out juror should promptly join the majority.

If this were a federal case subject to our supervisory powers, the trial judge's first inquiry into the numerical division of the jury would have required reversal. *Brasfield v.*

---

**3.** At oral argument, the State seemed to suggest the trial court could not repeat the cautionary admonition because the California Supreme Court has prohibited use of the coercive portion of the *Allen* charge. The California court has prohibited use of any supplemental charge that (1) directs minority or hold-out jurors to reconsider their views in light of the majority, (2) informs the jury that the case will be retried and decided eventually, or (3) informs the jury of the expense and inconvenience of retrial, *People v. Barraza,* 23 Cal.3d 675, 153 Cal.Rptr. 459, 591 P.2d 947, 949 (1979); *People v. Gainer,* 19 Cal.3d 835, 139 Cal.Rptr. 861, 867–70 & n. 16, 566 P.2d 997, 1003–06 & n. 16 (1977), but also has permitted California trial courts to provide supplemental instructions reminding jurors not to surrender their convictions simply because a majority of jurors has taken a different view of the case, *People v. Sheldon,* 48 Cal.3d 935, 258 Cal.Rptr. 242, 254–56, 771 P.2d 1330, 1343–44 (1989); *People v. Keenan,* 46 Cal.3d 478, 250 Cal.Rptr. 550, 582–88, 758 P.2d 1081, 1113–18 (1988).

**4.** Jimenez filed a motion that we take judicial notice of the trial minutes. They are part of the state court record and available for review without a motion.

*United States*, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926). Since *Brasfield*'s per se rule rests on the supervisory power, it does not apply in federal habeas review. *Lowenfield v. Phelps*, 484 U.S. 231, 239–40 & n. 3, 108 S.Ct. 546, 551–52 & n. 3, 98 L.Ed.2d 568 (1988); *Locks v. Sumner*, 703 F.2d 403, 406 (9th Cir.1983). Upon review of the totality of the circumstances of this case, however, including the facts that the court repeated the inquiry into the numerical division of the jury, told the jury it should seek unanimity when there was only a single hold-out, and failed to admonish individual jurors not to surrender their individual views simply to achieve a verdict, we conclude the state trial judge violated Jimenez's due process rights by impermissibly coercing the jury to render a guilty verdict.[5]

Reversed.

KOZINSKI, Circuit Judge, dissenting.

As federal judges, we're subject to a peculiar myopia: We tend to see the federal way of doing things as the best way, often as the be-all and end-all of due process. This preference for the familiar is understandable enough, but it carries with it special dangers when we review state convictions for constitutional error. There are many ways of giving a defendant a fair trial. We sap our federal system of vitality and creativity when we strike down state procedures because they differ from our own.

This is a case in point. Not everyone agrees on how to deal with a jury that indicates it's deadlocked. The jury shouldn't keep deliberating if unanimity is beyond reach, but it ought not to be discharged if there's a reasonable possibility of reaching agreement. To resolve this tension, most federal courts, as well as some state courts, give an *Allen* charge—a fairly coercive instruction that tells jurors to go back and try again. The *Allen* charge has been subject to

much criticism, however, and many courts have either modified or rejected it, the California Supreme Court among them.[1] *People v. Gainer*, 19 Cal.3d 835, 139 Cal.Rptr. 861, 566 P.2d 997 (1977), held that the *Allen* charge is inherently coercive and thus reversible error. In its place, the California Supreme Court approved a neutral inquiry into the jury's numerical division as "an important tool in ascertaining the probability of agreement." *People v. Rodriguez*, 42 Cal.3d 730, 776 n. 14, 230 Cal.Rptr. 667, 726 P.2d 113 (1986). It has repeatedly refused to reconsider this practice. *See, e.g., People v. Price*, 1 Cal.4th 324, 467, 3 Cal.Rptr.2d 106, 821 P.2d 610 (1991); *People v. Proctor*, 4 Cal.4th 499, 539 n. 7, 15 Cal.Rptr.2d 340, 842 P.2d 1100 (1992).

Confronted with a possible jury deadlock, the state trial judge here did precisely what his state supreme court told him to: He asked the foreperson about the jury's division. Upon learning there'd been movement in one direction, he exercised the discretion entrusted to him and sent the jury back for further deliberations. Later, when the jury again declared itself deadlocked, the judge again followed his supreme court's instructions and asked the foreperson for a division. Learning that the jury had moved even closer to agreement, the trial judge again exercised his judgment and sent them back to deliberate. He turned out to be right: The jury returned a verdict later that day.

By overturning the conviction so obtained, my colleagues are casting serious doubt on a procedure the California Supreme Court and a number of other state supreme courts have approved for dealing with apparent jury deadlock. My colleagues hold that the practice of asking for a jury's division is so inherently coercive it renders a trial fundamentally unfair when combined with even the trivial comments the trial judge made here. This ruling bodes ill for countless convictions in

---

5. We announce no "new rule as a concomitant of due process," as the dissent suggests, but simply apply the well-established "totality of the circumstances" test. *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) does not apply.

1. Even the federal courts are far from unanimous on how to deal with jury deadlock. While we allow the *Allen* charge in its original form, *see United States v. Seawell*, 583 F.2d 416 (9th Cir. 1978), the Third Circuit has forbidden it altogether, *see United States v. Graham*, 758 F.2d 879 (3d Cir.1985).

California and other states that follow the California practice. *See* p. 1481 *infra.*

My colleagues give no persuasive reason for such heavy-handed interference with the power of state supreme courts to resolve difficult issues of trial practice. Today's ruling moves us one step farther away from a truly federal system where the state courts serve as laboratories for shaping the flexible and evolving standards of due process. It moves us one step closer to a world where our way of doing things becomes the only way, where state courts dare not deviate from our procedures lest they risk wholesale invalidation of their convictions.

A. First things first. The majority overturns the conviction here because it finds the trial judge's actions unduly coercive. We should pause to ask whether the coercion of a few holdout jurors in a state criminal trial can ever violate due process. Jury coercion violates due process in a federal criminal trial because the defendant there is constitutionally entitled to a unanimous jury. *Johnson v. Louisiana,* 406 U.S. 356, 371, 92 S.Ct. 1620, 1638, 32 L.Ed.2d 152 (1972) (Powell, J., concurring). Coercion of holdout jurors impairs the federal defendant's Sixth Amendment right to a fair trial because it casts doubt on whether the jury was unanimous. But the defendant in a state criminal trial has no constitutional right to a unanimous jury; an 11–1, 10–2 or even 9–3 guilty verdict is consistent with due process. *Id.* at 363, 92 S.Ct. at 1625 (majority opinion). If a state can dispense with the concurrence of one, two, three—perhaps even more—holdout jurors altogether, why can't it try to secure the agreement of those same jurors through moral suasion?[2] The latter procedure seems an *a fortiori* case of the former.

Nor is jury coercion inherently prejudicial to the defense. Our perception of this may be distorted because every time *we* see jury coercion, the jury has convicted; it's easy to conclude that coercion always harms defendants. But pressuring holdout jurors is just

as likely to lead to an acquittal as to a conviction, depending on the direction the jury is leaning. When judicial pressure is applied without regard to whether the jury favors a conviction or an acquittal, it's hard to say this denies the defendant a fair trial.

Finally, it might be argued that if a defendant is entitled to a unanimous jury as a matter of state law, it violates due process to let the judge coerce the holdout jurors. But it all turns on how state law defines unanimity. Some states view unanimity in the same pristine fashion as the federal courts; others may temper the concept, allowing some pushing and tugging to get there. It surely doesn't violate due process for state law to define unanimity more flexibly than federal law.

The Supreme Court has, nevertheless, suggested that jury coercion in a state trial can violate due process. *See Lowenfield v. Phelps,* 484 U.S. 231, 241, 108 S.Ct. 546, 552, 98 L.Ed.2d 568 (1988). Absent more specific guidance it's probably safest to assume it does. But in deciding how bad jury coercion is—and how much leeway to allow states in dealing with apparently hung juries—we must keep in mind the teachings of cases like *Johnson, Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970) (12–person jury is not a constitutional requirement), and *Cupp v. Naughten,* 414 U.S. 141 (1973) (jury instruction universally condemned in federal courts is not unconstitutional), which guarantee states a good deal of latitude in conducting jury trials.

B. Even if we assume jury coercion violates due process, we must next ask whether what happened here was coercive. Ever since the Supreme Court's ipse dixit in *Brasfield v. United States,* 272 U.S. 448 (1926), the federal courts have taken it as an article of faith that a judicial inquiry into the jury's division is coercive. But *Brasfield* didn't explain why it found this practice coercive nor is the reason immediately apparent. After all, asking the jury how it's divided carries

---

**2.** The matter might be different if the jury has made it clear it's leaning towards a conviction; jurors might then interpret a nudge towards unanimity as a hint that the judge believes the defendant is guilty. If the judge "urge[s] his own view

of the guilt or innocence of the accused," he may interfere with the defendant's right to a trial by the jury. *Billeci v. United States,* 184 F.2d 394, 403 (D.C.Cir.1950).

with it no explicit message; it exhorts the jurors to do nothing at all. I suppose the inquiry could be understood as denoting some judicial impatience, perhaps some veiled suggestion that jurors in the minority give in to their peers. *Brasfield*'s determination that holdout jurors will perceive and be swayed by such a hidden message is less law than psychology, more a guess than a fact. One could conclude just as easily that the inquiry is not coercive because the jury will read nothing into it.

A number of states take this view. California is but one of seven states to have determined that a judicial inquiry into the jury's division is noncoercive and entirely appropriate. *See State v. Keaulana,* 784 P.2d 328 (Haw.1989); *State v. Jones,* 641 P.2d 708 (Wash.1982); *State v. Morris,* 476 S.W.2d 485 (Mo.1971); *Dunford v. State,* 614 P.2d 1115 (Okla.Crim.App.1980); *Sharplin v. State,* 330 So.2d 591 (Miss.1976); *State v. Rickerson,* 625 P.2d 1183 (N.M.1981). To this group, two other states can be added that also seem to approve the practice. *See Odom v. State,* 682 S.W.2d 445, 448 (Tex.Ct. App.1984) (defendant "has not cited a Texas case, nor have we found one, which makes the mere inquiry as to the numerical division of the jury reversible error per se"); *State v. Schamburge,* 344 So.2d 997, 1001 (La.1977) ("The trial judge did no more than make a general inquiry as to prospects for a verdict and reminded the jury that ten of the twelve had to agree upon a verdict.").

Another group of states—seven by my count—condemns the practice summarily. *See Gumer v. Commonwealth,* No. 85–CA– 1923–MR (Ky.Ct.App. April 25, 1986); *Graham v. State,* 325 Md. 398, 601 A.2d 131 (1992); *Hyman Reiver & Co. v. Rose,* 51 Del. 397, 147 A.2d 500 (1958); *People v. Wilson,* 390 Mich. 689, 213 N.W.2d 193 (1973); *Rodriguez v. State,* 559 So.2d 678 (Fla.Ct.App. 1990); *Kersey v. State,* 525 S.W.2d 139 (Tenn.1975); *State v. George,* 219 Mont. 377, 711 P.2d 1379 (1986). They rely on *Brasfield* or a closely analogous rationale.

An additional eleven states have addressed the issue but do not have a clear-cut position. Among them are states like North Carolina, which find that "[s]uch inquiries are not inherently coercive...." *State v. Bussey,* 321 N.C. 92, 361 S.E.2d 564, 567 (1987). States like Illinois and Arizona disapprove the inquiry but consider it harmless. *People v. Craddock,* 163 Ill.App.3d 1039, 115 Ill.Dec. 1, 6, 516 N.E.2d 1357, 1362 (1987); *People v. Kirk,* 76 Ill.App.3d 459, 31 Ill.Dec. 835, 841, 394 N.E.2d 1212, 1218 (1979); *State v. Roberts,* 131 Ariz. 513, 642 P.2d 858, 861 (1982). A substantial number mention, but make no adverse comment on, the trial judge's inquiry into the jury's division, and focus instead on supplemental *Allen*–type instructions. *See State v. Marsh,* 260 Or. 416, 490 P.2d 491, 501 (1971); *Hardin v. State,* 225 Ark. 602, 284 S.W.2d 111, 115 (1955); *Black v. State,* 255 Ga. 668, 341 S.E.2d 436 (1986); *State v. Anderson,* 247 Minn. 469, 78 N.W.2d 320, 326–27 (1956). Some states adopt a balancing approach, considering the inquiry as part of a broader question of coercion. *Richardson v. State,* 508 So.2d 289, 293–94 (Ala.Crim. App.1987); *People v. Austin,* 185 Colo. 229, 523 P.2d 989, 993–94 (1974); *State v. Cornell,* 266 N.W.2d 15, 19 (Iowa 1978); *White v. State,* 95 Nev. 881, 603 P.2d 1063, 1065 (1979).

In determining whether a particular state court procedure violates due process, it's highly relevant whether that state is alone in its view. While a deviation from the norm doesn't automatically offend the Constitution, failure to follow the collected wisdom of other American jurisdictions can raise doubts about whether the procedure is consistent with due process.[3] The Supreme Court's analysis in *Beck v. Alabama,* 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), illustrates this point. *Beck* held that the defendant in a capital trial is entitled, as a matter of due process, to a lesser included offense instruction. The Court reasoned that "the nearly universal acceptance of the rule in both state and federal courts [as a matter of statutory or common law] establishes the

---

**3.** The converse isn't necessarily true; a procedure might violate due process even though a substantial number of states follow it. Yet, in determining whether an inquiry into numerical division is coercive, it surely matters that a significant number of state supreme courts have considered the procedure and held it isn't.

value to the defendant of this procedural safeguard." *Id.* at 637, 100 S.Ct. at 2389. There is no such universal agreement that a judicial inquiry into a jury's division is coercive. The majority's assumption to the contrary—which lies at the heart of its ruling—is without support.

C. Even assuming the judge's inquiry into the jury's division and his related comments were coercive, we must next ask *how* coercive. My colleagues recognize that "coercion must be more severe to constitute a violation of due process than to invoke our supervisory powers," Maj. op. at 1477, but they then stand this admonition on its head. The cautionary part of the *Allen* charge—the absence of which the majority sees as the great failing here—is designed to offset the coercive part of the charge. Thus, in order to vacate a state conviction for failure to give a cautionary reminder, the judge's actions here had to be more coercive than the dynamite part of the *Allen* charge.

By any standard, what happened here—if it was coercive at all—was much less coercive than the typical *Allen* charge, where the trial judge looks the holdout jurors in the eye and says:

> There is no reason to think that this case could be better tried or that another jury is better qualified to decide it. It is important therefore that you reach a verdict if you can do so conscientiously. Therefore, if it looks at some point as if you may have difficulty in reaching a unanimous verdict and if the greater number of you agreed on a verdict, the other jurors may want to ask themselves about the basis for their feelings when a substantial number have reached a different conclusion. You should therefore ... not hesitate to reconsider your views from time to time and to change them if you are persuaded that this is appropriate. It is important that you attempt to return a verdict. ...

*United States v. Ajiboye,* 961 F.2d 892, 893 n. 1 (9th Cir.1992).

Contrast what happened here: The trial judge asked the jury to tell him how badly they were split and whether there'd been any movement. His comments were relatively mild, more by way of explanation than exhortation. After the first inquiry, when he learned the jury was moving toward unanimity, the judge said: "Well, that's what's important to me because of the nature of the type of case. I want to find out that there has been movement." His comment after the second inquiry was entirely neutral: "All right. Due to the fact we have had that type of movement, I would request, then, to finish the rest of today and see where we are at that point in time. All right? Okay."

What happened here simply is not on a par with—let alone more coercive than—the dynamite portion of the *Allen* charge. The majority errs even according to the standard it has set for itself.

D. Even were we to adopt the majority's approach today, we would have no business applying it retroactively to petitioner or to any other state prisoner whose conviction has become final. The Supreme Court in *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (plurality opinion), held that where the federal courts adopt a new rule as a concomitant of due process, the rule must—except in rare cases—be applied only prospectively.[4] The reasons for this are amply demonstrated by the case before us: What the trial judge did here wasn't an aberration; he followed a practice the California Supreme Court had approved repeatedly. Giving today's rule retroactive application will have a profound and unsettling effect on hundreds of convictions entered by the courts of California and other states in this circuit. In many cases, there will be no hope of retrying the defendants. Retroactive application of the new rule thus significantly impairs these states' legitimate interests in maintaining convictions secured through procedures their courts reasonably believed conformed with due process.

---

**4.** There are two exceptions to this general rule: if the rule places "certain kinds of primary, private individual conduct beyond the power of the criminal lawmaking authority to proscribe;" or if it requires the observance of "those procedures that ... are 'implicit in the concept of ordered liberty.'" 489 U.S. at 307, 109 S.Ct. at 1073 (citations omitted). It goes without saying that neither applies here.

That the rule the majority adopts is new can hardly be doubted. No federal court—no court anywhere—has held that a state judge's inquiry into a jury's numerical division is sufficiently coercive to require an *Allen*–type cautionary instruction. The only case the majority cites, *Jones v. Norvell*, 472 F.2d 1185 (6th Cir.1973), involved not an inquiry as to division alone but, as my colleagues acknowledge, an instruction that "it was [the jury's] duty to reach a verdict." Maj. op. at 1478. Reliance on *Jones* is particularly misplaced in light of the Sixth Circuit's own limited reading of it in *Williams v. Parke*, 741 F.2d 847 (6th Cir.1984). The *Williams* court confronted a situation far more egregious than that here: a state trial court that had not only inquired into the jury's division, but given a truncated *Allen* charge—one that was all coercion and no cautionary reminder. *Id.* at 849, 851; *see also id.* at 853 (Contie, J., dissenting). The court distinguished *Jones* on the ground that, "in *Jones*, the trial judge determined not only the jury breakdown, but also the majority's inclination." *Id.* at 851. In addition, "the judge in *Jones* ... wrongly asserted that the twelve people of the jury 'are the only ones' who could reach a verdict in the case, thus appearing to assert the impossibility of retrial." *Id.* at 851–52.

Sixth Circuit case law can more fairly be characterized as conflicting with the majority's opinion than supporting it. If the inquiry as to division plus the coercive portion of the *Allen* charge didn't violate due process in *Williams*, the trial judge's neutral inquiries and oblique comments here surely did not.

Other federal circuits have uniformly rejected the kind of claim the majority sustains here. *Ellis v. Reed*, 596 F.2d 1195 (4th Cir.1979), dealt with a situation where the judge had asked about the jury's division, and was told "eleven to one." He then gave a fairly strong version of the *Allen* charge, reminding the jurors that if they could not agree "the time of the Court will again have to be consumed in the trial of this action;" that "it is your duty to try to reconcile your differences and to reach a verdict;" that "a mistrial will mean that another jury will have

to be selected to hear this case and the evidence again; and it's long and complicated;" and finally that "I want to emphasize the fact that it is your duty to do whatever you can to reason this matter over as reasonable men and women and attempt to reconcile your differences...." *Id.* at 1196. The jury reached agreement in eight minutes. *Id.* By any standard, the coercion in *Ellis* was far more severe than anything that happened here.

Although the state trial judge did include a brief cautionary instruction, the approach of *Ellis* surely diverges from that of the majority here. *Ellis* grounded its analysis on the Supreme Court's rulings in *Johnson*, *Williams* and *Cupp* and concluded that these are matters that should be left to the state courts:

> We are of the opinion that the injury is essentially procedural in nature, absent any overt coercion upon the minority jurors. In any event, the jury knew how it was divided.... [W]e feel that under the principles of federalism the decision whether to allow the inquiry is best left to the supervising state court. Indeed, we have expressed the opinion that there is some value to the inquiry in a federal case when the trial judge is deciding whether to declare a mistrial or otherwise excuse the jurors for dinner.

*Id.* at 1200. Nothing in the Fourth Circuit's opinion paves the way for our ruling today.

The Seventh Circuit took a similarly narrow view of the federal prerogatives in this area. In *United States ex rel. Kirk v. Director, Dept. of Corrections*, 678 F.2d 723 (7th Cir.1982), the court confronted the petitioner who'd been the defendant in *People v. Kirk. See* p. 1481 *supra*. In *Kirk*, the Illinois Court of Appeals held that the inquiry into jury division was error but harmless. The Seventh Circuit characterized the case as involving an inquiry into jury division followed by a modified *Allen* charge, although neither its opinion nor that of the Illinois appellate court discloses the exact nature of the charge.[5] The Seventh Circuit

---

5. *People v. Kirk* says that the trial judge gave a

*Prim* instruction. In *People v. Prim*, 53 Ill.2d 62,

rejected the argument that an inquiry as to jury division was inherently coercive; the court didn't focus on whether the trial judge reminded the jurors of their duty not to give up honestly held beliefs. Instead, the court held that the inquiry had to be considered in light of all the circumstances of the case, and that the defendant had shown nothing to suggest the inquiry was coercive. *Kirk* surely does not foreshadow the result here for purposes of *Teague*.

The Eighth Circuit dealt with the issue in *Cornell v. State*, 628 F.2d 1044 (8th Cir.1980), reviewing the ruling of the state court in *State v. Cornell*, 266 N.W.2d 15 (Iowa 1978). *See* p. 1481 *supra*. In *Cornell*, the trial judge asked how the jury was divided after more than 15 hours of deliberation, and was told 7 to 5. At that point, the trial court gave a lengthy *Allen*-type charge that can best be described as 95% dynamite and 5% caution.[6] The Eighth Circuit denied relief, noting that "neither the inquiry nor the *Allen* charge, nor the two in combination, was coercive of the jury's ultimate verdict of guilty." *Cornell*, 628 F.2d at 1048. *Cornell*, like *Ellis*, is difficult to square with our ruling today and is arguably in direct conflict. It certainly in no way presages our decision for purposes of *Teague*.

Finally, there's our prior ruling in *Locks v. Sumner*, 703 F.2d 403 (9th Cir.1983), which involved an inquiry as to numerical division, apparently not followed by any comment from the trial judge. *Id.* at 405 n. 1. We

upheld the conviction; citing *Cornell*, *Ellis* and *Cupp*, we concluded:

Here, the circumstances in which the inquiry was made do not persuade us that the jury was in any way coerced: The jury was about to be dismissed for the weekend and the judge may have been wondering whether it was close to agreement, making it best to continue deliberations; he made a simple and, on its face, uncoercive inquiry; he did not ask whether the jurors in the majority were for acquittal or a guilty verdict; the judge did not follow the inquiry with any statement imploring the jury to come to a decision; and the jury was not sent back to continue deliberations, but was dismissed for the weekend. We therefore affirm the district court on this issue.

*Id.* at 407. If *Locks* is not actually in conflict with our opinion today, it surely contains no suggestion, no hint, that an *Allen*-type cautionary reminder is required whenever the judge asks the jury how it's divided.[7]

The long and short of it is that today's decision is out of step with those of other federal courts. It's the first case anywhere that equates a neutral inquiry into the jury's division with the dynamite portion of an *Allen* charge; it is the first federal court to reverse a state conviction under these circumstances. If *Teague* does not bar retroactive application in these circumstances, it has no meaning at all.

E. The Supreme Court has repeatedly directed the federal courts to stick to their limited role in reviewing state convictions.

289 N.E.2d 601 (1972), the Illinois Supreme Court approved the use of the ABA recommended instruction in lieu of the standard *Allen* charge. The ABA instruction contains a milder form of the *Allen* dynamite charge, as well as a cautionary reminder. *Id.*

6. The only portion of the instruction which can be deemed cautionary is the following phrase: "[W]hile this verdict must be the conclusion of each juror and not a mere acquiescence of the jurors in order to reach agreement...." *Cornell*, 628 F.2d at 1046. This was sandwiched between a variety of exhortations such as: "A proper regard for the judgment of others will greatly aid us in forming our own judgment," and "there is no reason to think a jury better qualified could ever be chosen," and "if the members of the jury differ in their views of the evidence, such difference of opinion should cause

them all to scrutinize the evidence more closely and to reexamine the grounds of their opinion," and "your duty is to decide the issues of fact which have been submitted to you, if you can conscientiously do so," and "you should lay aside all mere pride of opinion and should bear in mind that the jury room is no place for espousing and maintaining in a spirit of controversy."

7. Also relevant is *United States v. Akbar*, 698 F.2d 378 (9th Cir.1983), cited in *Locks*. In *Akbar*, the district judge conducted an unusual jury poll to determine which jurors wanted certain testimony reread. During the course of that procedure, the judge learned not only that the jury was split 11 to 1, but also the identity of the holdout juror. There was no cautionary instruction, yet the court reluctantly affirmed. *See also id.* at 380–81 (Kennedy, J., concurring).

*See, e.g., Estelle v. McGuire,* —— U.S. ——, ——, 112 S.Ct. 475, 480, 116 L.Ed.2d 385 (1991) ("[W]e reemphasize that it is not the province of a federal habeas court to reexamine state court determinations on state law questions."); *see also Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 874–75, 79 L.Ed.2d 29 (1984). But, as this case illustrates, many federal judges find it difficult to separate their role of supervising the federal courts from their narrower role of policing possible constitutional violations in state habeas cases. Nor is this an isolated instance. In two other recent habeas cases, my colleagues casually equated federal rules of procedure with constitutional requirements. *See Henry v. Estelle,* 993 F.2d 1423 (9th Cir.1993); *McKinney v. Rees,* 993 F.2d 1378 (9th Cir. 1993). *Henry* is a particularly egregious example, containing, as it does, the following passage: "This inference is impermissible. Fed.R.Evid. 404." *Henry,* 993 F.2d at 1427. I fear a pattern is emerging where federal judges create constitutional rules that allow them to remake state procedure in the federal image.

As Chief Justice Burger once noted, "[w]e should be cautious about constitutionalizing every procedural device found useful in federal courts, thereby foreclosing the States from experimentation with different approaches which are equally compatible with constitutional principles." *Crist v. Bretz,* 437 U.S. 28, 39, 98 S.Ct. 2156, 2163, 57 L.Ed.2d 24 (1978) (Burger, C.J., dissenting). If the current trend continues, the concept of due process will disappear altogether, to be replaced by the Federal Rules of Criminal Procedure. *See Williams,* 399 U.S. at 136–38, 90 S.Ct. at 1925–26 (Harlan, J., concurring in result). This is not, I respectfully suggest, a wonderful idea.

### Conclusion

Dealing with an apparently deadlocked jury is not easy. Reasonable jurists certainly might respond in more than one way. My colleagues today foreclose the State of California from pursuing the approach it prefers merely because this approach doesn't conform to the mold cast by the federal courts.

By applying the decision retroactively, the majority compounds the damage. I dissent.