39 F.3d 1190
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Angelo Raynard VINSON, Defendant-Appellant.
 No. 94-10005.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 5, 1994.
Decided Oct. 28, 1994.
 
 Before: GOODWIN, O'SCANNLAIN and KLEINFELD, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 We are asked to determine whether the district court coercively interposed itself between the jurors and their deliberations, prejudicing the defense. We conclude that it did, and we reverse.[1]
 
 Facts
 
 3
 Appellant Angelo Raynard Vinson was charged with a single count of violating 18 U.S.C. Sec. 2114, armed postal robbery. Vinson's defense was alibi. The dispositive issue on appeal concerns the conduct of the district judge after the jury had retired for its deliberations, and we focus our discussion accordingly.
 
 
 4
 After three days of testimony and argument, and a four day recess, the court instructed the jury and it retired about 2:00 p.m., to deliberate. After about three hours of deliberation, the jury indicated to the marshal that they had not yet reached a verdict. They gave no indication that they were deadlocked. While the record is silent on the purpose of the contact with the marshal, the inference is that they were curious whether they were to keep working, go home, or plan on eating supper as a group.
 
 
 5
 The district judge learned that the jury had a question and told counsel that he would recall the jurors and ask the foreperson whether they were on the verge of reaching a verdict. If they were not, he would excuse them until the next morning:
 
 
 6
 THE COURT: What I propose to do is call the jury in, remind the foreperson about the instruction about communicating in writing, and then I propose to ask him if they deliberated a little longer, that we could save a day and see what the response is from the foreperson; and if it appears that there's no likelihood of reaching a verdict before 6:00 or 6:30, I propose to excuse the jurors until 9:30, tomorrow morning.... That in general is what I propose to do.
 
 
 7
 Instead of following the stated plan, the judge began polling the jurors, over defense counsel's repeated objection, to determine whether any among them would find it "helpful" to have the court reread selected excerpts from the jury charge. He reread the instruction on reasonable doubt, reminding the jurors that the standard of proof doesn't "requir[e] you to take leave of your common sense." He reread portions of the instruction on the duty to deliberate. Then he said: "the main issue is the identity of the defendant," and began to repeat the instruction on circumstantial evidence.
 
 
 8
 The following colloquy next occurred in the presence of the jury:
 
 
 9
 THE COURT: Now, I'd like to assist the jurors in this discussion with an illustration of direct and circumstantial evidence. Does anyone object to that?
 
 
 10
 MR. MARTINEZ: As it applies to this? Yes.
 
 
 11
 THE COURT: Why do you object?
 
 
 12
 MR. MARTINEZ: The jury has not requested that.
 
 
 13
 THE COURT: Would it be helpful to you if I give you an illustration in this case as to what's direct or what's indirect? You can answer yes or no.
 
 
 14
 A JUROR: Yes.
 
 
 15
 THE COURT: The juror nods yes. Do you still--do you want to keep from this jury a clear illustration of what is direct and indirect evidence in this case? You don't want the jury to know that?
 
 
 16
 MR. MARTINEZ: I would object to the entire procedure of questioning the jury.
 
 
 17
 THE COURT: What's your authority for that? Show me one case in which it's improper for a judge to try to help the jury to understand the instructions and to reach a fair decision. Show me what's--
 
 
 18
 MR. MARTINEZ: I would like to be heard at side bar.
 
 
 19
 (At side bar)
 
 
 20
 MR. MARTINEZ: What I want to say is that I believe that in an attempt to assist the jury, the court is inadvertently influencing or may influence the jury adversely against my client by several things. One--
 
 
 21
 THE COURT: By what?
 
 
 22
 MR. MARTINEZ: By picking and choosing different instructions and asking the jury if they want those instructions read over and suggesting that specific instructions be read. Your honor is picking and choosing separate instruction.
 
 
 23
 THE COURT: All right, counsel, are you finished?
 
 
 24
 MR. MARTINEZ: Yes.
 
 
 25
 THE COURT: What's your authority for that? Do you have any authority?
 
 
 26
 MR. MARTINEZ: The right of Mr. Vinson to be tried by a jury without influence.
 
 
 27
 ....
 
 
 28
 (Before the jury)
 
 
 29
 MR. MARTINEZ: I would ask the court to refrain from asking the jury questions in the absence of questions from the jurors that they need assistance in any specific regard.
 
 
 30
 THE COURT: Well, I'll say to you, counsel, in all friendliness, I regard the duty of this court to do everything it can to help the jurors to follow the law.
 
 
 31
 The judge next offered an illustration of circumstantial evidence, which the jurors had not requested and which was a surprise to both counsel. We express no opinion on the quality of the illustration, but note that it was wholly uncalled for at the time it was given.
 
 
 32
 The judge next instructed the jurors to return to the jury room, saying that he would like them to return a verdict within the hour, but they were not obligated to. He added, "[t]here is no reason to believe that another jury can do a better job than you can. So, go ahead."
 
 
 33
 At 6:30 P.M., the judge called the jurors a second time to the courtroom. The judge asked whether "another 15 or 20 minutes will result in a verdict." The foreman said "no," and this remarkable lecture from the bench followed:
 
 
 34
 THE COURT: Now, I'm not concerned as to which way the jury decides they have reached a verdict, but I see no reason for not reaching a verdict. The evidence in this case was quite complete, well presented and I'm distressed that this jury has not been able to reach a verdict on the evidence in this case. I'm about to excuse you for the day. But I'm going to ask you to review the evidence, consider the views of your fellow jurors, and don't give up any conviction of your own and don't just be stubborn. When you're in the jury room, I want you to discuss the case. It's been a long hard day for the jurors, the attorneys and, as a matter of fact, the court.... Perhaps a good night's sleep will enable you to reach a decision. It doesn't seem to me that the evidence in this case--it's up to you to decide, of course--is all that complicated. It seems to me that on the instructions I have given you, you ought to be able to reach a verdict, a proper verdict, for one side or the other. It's difficult for me to understand why you haven't. I'm not expressing a view as to what your verdict ought to be, one side or the other.
 
 
 35
 The jurors were at last sent home for the day. They reconvened to deliberate at 9:30 A.M. the next morning. The record does not reveal how long the jury deliberated that morning, but at 10:15 A.M., the attorneys were notified that the jury was ready to deliver its verdict. The verdict was guilty.
 
 
 36
 We consider the "totality of the circumstances" in considering whether the district court coerced the jury into reaching a guilty verdict. Jimenez v. Myers, 12 F.3d 1474, 1477 (9th Cir.1993), petition for cert. filed, 62 U.S.L.W. 3794 (Apr. 20, 1994) (No. 93-1821).
 
 
 37
 Our decisions analyzing communications between the district court and deliberating jurors for signs of coercion fall into two basic categories. Where the judge's communications with deliberating jurors appear to serve "a purpose of assistance and instruction," we have found no coercion. United States v. Nickell, 883 F.2d 824, 829 (9th Cir.1989). Thus we have permitted judges to inquire whether the jurors are making progress toward verdict, United States v. Cuozzo, 962 F.2d 945, 951 (9th Cir.), cert. denied, 113 S.Ct. 475 (1992), and to encourage holdout jurors to reconsider their views and continue deliberations. United States v. Bonam, 772 F.2d 1449, 1451 (9th Cir.1985). In the first category of cases, these inquiries and encouragements are merely non-threatening requests for information the court needs for scheduling purposes, or else they serve as helpful advice to the jurors.
 
 
 38
 But we have never tolerated inquiries or encouragements that serve, not to assist each juror to reach the cautious and balanced judgment which, under our Constitution, is a federal criminal defendant's due, but only to express reproof, impatience, intemperance and frustration. See id. Supplemental instructions or other remarks that "convey the thought that by failing to come to an agreement ... the jurors have acted contrary to the earlier instruction as that instruction was properly to be understood," United States v. Seawell, 550 F.2d 1159, 1163 (9th Cir.1977), or that "becom[e] a lecture sounding in reproof," id., are not helpful, but coercive, and we have not hesitated to reverse a conviction that is the product of coercion.
 
 
 39
 This case falls into the second category of cases. The totality of the circumstances persuades us that the district court coercively interposed itself between the jurors and their deliberations. The jury never indicated that it was deadlocked. Three hours is not an unusual time for a jury to deliberate after a three day trial. In United States v. Contreras, 463 F.2d 773, 774 (9th Cir.1972), we noted the impropriety of prodding the jury to judgment prematurely. The district judge in that case gave a modified-Allen instruction to a jury that had not indicated deadlock. See Allen v. United States, 164 U.S. 492 (1896). We reversed, warning that a coercive supplementary charge "should be given only when it is apparent to the district judge from the jury's conduct or the length of its deliberations that it is clearly warranted." Id. (Emphasis added).
 
 
 40
 The district judge's supplementary questioning and instruction had the purpose and the effect of prodding the jury to premature judgment. He expressed "disappointment" and "distress" at what he perceived to be unjustifiable delay in reaching a "proper verdict," and he attempted to set deadlines so brief in duration--"do you believe that another 15 or 20 minutes will result in a verdict?"--that the jurors could not have failed to feel intense pressure from the bench to rush towards judgment. Nothing that had been said or done by the jurors "clearly warranted" these highly coercive comments.
 
 
 41
 Without more, the record we have set out might require a new trial. But there is more. The unrequested supplementary instructions strongly suggest that the jurors were pressured to rush, not toward any verdict, but toward a verdict of guilty. By picking and choosing instructions for repetition, and in giving an emphatic additional circumstantial evidence instruction, the judge all but suggested his own view that the evidence in the case was balanced in favor of conviction.
 
 
 42
 This conduct took on added significance in light of other remarks uttered in the presence of the jury. "Trial judges should be sensitive to the influence their comments and actions have on the jury and always should avoid the appearance of partiality." United States v. Johnson, 618 F.2d 60, 62 (9th Cir.1980). One remark, to the effect that defense counsel was trying "to keep from this jury a clear illustration of what is direct and indirect evidence in this case," suggested that a proper weighing of the circumstantial evidence in the case would not favor the defense. Other remarks, that "the evidence in this case was quite complete [and] well presented," and not "all that complicated," can be understood only as a positive assessment of the prosecution's case-in-chief, since, with the exception of the brief testimony of a single defense witness, the defense presented no affirmative evidence in support of Vinson's alibi at all.
 
 
 43
 It is unfortunate that the prosecution did not join in the defense attorney's efforts to object to the intervention by the judge, and possibly prevent an expensive mistrial.
 
 
 44
 REVERSED AND REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Because we conclude that the conviction must be set aside for this reason, we need not address appellant's argument that the district court abused its discretion in giving a consciousness of guilt instruction to the jury