Gregorio **JIMINEZ,** Petitioner–Appellant,

v.

**E.R. MYERS, Warden, Attorney General of California, Respondents–Appellees.**

No. 91–56476.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 2, 1993.

Decided Dec. 8, 1993.

As Amended Oct. 28, 1994.

---

Howard C. Cohen, Appellate Defenders, Inc., San Diego, CA, for appellant.

Peggy S. Ruffra, Deputy Atty. Gen., State of Cal., Los Angeles, CA, for appellees.

Before: BROWNING, HUG, and KOZINSKI, Circuit Judges.

PER CURIAM; Dissent by Judge KOZINSKI

### ORDER

The opinion filed December 8, 1993, slip op. at 13767, 12 F.3d 1474, is amended by substituting the attached part II for that originally filed.

### OPINION

PER CURIAM:

Gregorio Jiminez appeals the district court's denial of his petition for a writ of habeas corpus based on the claim that the state trial judge coerced the jury into rendering a guilty verdict in violation of Jiminez's Fourteenth Amendment right to due process.

### I.

Jiminez fired two shots through the front door of his cousin's house after she ran inside following an argument. He was convicted of attempted murder. At trial he claimed he intended only to frighten his cousin and had not fired until he believed she had moved away from the door. In an effort to gain an acquittal, Jiminez and his counsel made a "tactical decision ... not to seek any lesser included offenses or submit instructions thereon for the jury's consideration." In addition to describing the elements of attempted murder and giving other standard charges, the court instructed the jury that each juror should decide the case after discussion, but without succumbing to the pressure of the majority.[1]

After four and three quarter hours of deliberations, the jury sent the judge a note stating, "We are unable to reach a verdict and feel strongly that we would not be able to reach a verdict." Defense counsel took the position that "[i]n a case like this with this type of emotions and feelings, if they're deadlocked now, they're rarely going to change." The court called in the jury and engaged in the following exchange with the foreperson:

THE COURT: What I would like to know, how many votes have been taken?

FOREPERSON: Five or six.

THE COURT: Without telling me which direction, just numerically, how did it start, and what was it on the last?

FOREPERSON: [I will] Try to tell you numerically without [indicating] either way. To the best of my recollection, it started out about maybe seven to five, eight to four. Went to nine to three. All right. To back up, this morning, nine, two, and one.... This afternoon though, nine to three.

\* \* \* \* \* \*

THE COURT: All right. So you did have—how about in between, nine-two and one and then nine-three, has there been any movement one way or the other?

FOREPERSON: Nine-one-two, I would say at this point. And yes, there has been some movement in one direction.

> You should not hesitate to change an opinion if you are convinced it is erroneous. However, you should not be influenced to decide any question in a particular way because a majority of the jurors, or any of them, favor such a decision.

---

1. The court stated,
   Both the people and the defendant are entitled to the individual opinion of each juror.
   It is the duty of each of you to consider the evidence for the purpose of arriving at a verdict if you can do so. Each of you must decide the case for yourself, but should do so only after a discussion of the evidence and instructions with the other jurors.

THE COURT: Okay. Well, that's what's important to me because of the nature of the type of case. I want to find out that there has been movement.

After a three-day weekend, the jury returned to its deliberations. Three hours later, the jury sent another note to the court stating, "We are at an impasse and request further direction." The prosecutor responded, "If the impasse means that they're once again hopelessly hung, perhaps now would be the time to accept that and set it for retrial." Defense counsel agreed, "Any further pressure upon [the jury] would be prejudicial to the defendant." The court declared it would bring the jurors back to the courtroom to "see if there's been any substantial movement at all. If there has not been, then I'll have to declare a mistrial."

The court's questions to the jury and the foreperson's responses were as follows:

THE COURT: Okay. Now last Friday I inquired of you as to whether or not there had been any movement by the jury. So I'll ask you that same question again with the understanding, all I want is numbers, not which direction you're at. How many votes have you taken since last Friday?
FOREPERSON: Two or three. Two.
COURT: Two more?
FOREPERSON: Un-huh.
COURT: What's the latest?
FOREPERSON: Eleven-one.
COURT: So there has been, then, substantial movement since the last time.
FOREPERSON: Yes.
THE COURT: All right. Due to the fact we have had that type of movement, I would request, then, to finish the rest of today and see where we are at that point in time. All right? Okay.

Defense counsel objected and asked the court to inquire whether further deliberation would be fruitful. Counsel explained, "if there's one person in there that's for not guilty, it's putting them on a tremendous amount of pressure, and I don't think they should be subjected to that pressure." The court concluded the hold-out juror would not be subjected to "undue pressure" in light of the substantial change in the vote within the jury in the course of their deliberations and because the jury had been asked to deliberate "the rest of today"—about two more hours. The jury returned a guilty verdict after an hour and forty-eight minutes of additional deliberation.

Jiminez raised the issue of jury coercion without success on appeal to the California Court of Appeals and in a petition for review to the California Supreme Court. Jiminez then filed this petition for a writ of habeas corpus.

The magistrate judge recommended the writ be granted on the ground the state trial judge had coerced the hold-out juror into joining in the guilty verdict. The magistrate judge noted that the state trial judge twice polled the jury about the jury's numerical division on the merits after the jury had announced an impasse; that the prosecution and defense agreed to accept a deadlock after the jury's second note, but the court refused; and that the judge's comments to the jury strongly implied the jury's movement from an initial division of seven to five to a division of eleven to one should continue toward unanimity. The district court disagreed, stating, inter alia, that the hold-out juror would not have felt coerced because he or she would have known the judge would declare a mistrial at the end of the day.

## II.

Whether the comments and conduct of the state trial judge infringed defendant's due process right to an impartial jury and fair trial turns upon whether "the trial judge's inquiry would be likely to coerce certain jurors into relinquishing their views in favor of reaching a unanimous decision." *Locks v. Sumner*, 703 F.2d 403, 406 (9th Cir.1983). Whether the state trial judge coerced the "holdout" juror to join with the others to make the verdict unanimous is a mixed question of law and fact "requiring the application of legal principles to the historical facts." *Hamilton v. Vasquez*, 882 F.2d 1469, 1471 (9th Cir.1989) (citation omitted). Accordingly, we determine *de novo* the constitutional weight to be given the facts. *See Id.* at 1471 (citing *Reiger v. Christensen*, 789

F.2d 1425, 1428–29 (9th Cir.1986)); *Torrey v. Estelle*, 842 F.2d 234, 235 (9th Cir.1988). We consider whether the court's actions and statements were coercive in the totality of the circumstances. *See Locks*, 703 F.2d at 406–07 ("the inquiry by the judge must be viewed in light of the context in which it was made, not in isolation") (citations omitted); *United States v. Seawell*, 550 F.2d 1159, 1163 (9th Cir.1977) ("the general test of whether a supplemental jury instruction is in error is to consider all the circumstances to determine if the instruction was coercive") (citation omitted); *Marsh v. Cupp*, 536 F.2d 1287, 1290 (9th Cir.1976) (test for jury coercion is " 'whether in its context and under all the circumstances of this case the statement was coercive' ") (quoting *Jenkins v. U.S.*, 380 U.S. 445, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965)).[2]

■ Applying the totality of the circumstances test, we held in *Locks v. Sumner* that a trial court's neutral inquiry into the division of the jury without other circumstances suggestive of coercion does not deprive a defendant of due process.[3] 703 F.2d at 407.[4] The state contends the trial court simply made the same neutral, non-coercive inquiry held constitutional in *Locks*, and commonly employed by California trial judges. The record shows much more occurred. After the jury first announced it had reached an impasse, the trial judge took a number of steps the judge in *Locks* did not: (1) the judge inquired how many ballots had been taken, and was told "five or six"; (2) the judge asked how the vote started and ended; the foreperson responded that the jury started out seven to five, went to eight to four, then nine to three, and was currently nine-two and one; (3) the judge then asked: "has there been any movement one way or another?" The foreman stated "yes, there has been some movement in one direction"; (4) the court then said: "Well, that's what's important to me. . . . I want to find out that there has been movement." (5) The judge returned the jury to its deliberations. After further deliberations, the jury informed the court it was at an impasse a second time, and (6) on inquiry stated it was divided eleven to one. Again, the trial court took steps beyond those taken in *Locks*: (7) the court said: "So there has been, then, substantial movement since the last time," and the foreperson responded "yes"; (8) the court then stated: "Due to the fact we have that type of movement, I would request, then, to finish the rest of today and see where we are at that point in time."

■ Viewed together and against the backdrop of the particular circumstances of the case, the trial court's comments and conduct amounted to giving the jury a de facto *Allen* charge, which instructs the jurors to work towards unanimity and the minority to reexamine its views. *See Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). After the first impasse, by eliciting the progression in the voting, determin-

---

2. Other circuits apply the same test. *E.g., Williams v. Parke*, 741 F.2d 847, 850 (6th Cir. 1984) (totality of circumstances); *Cornell v. Iowa*, 628 F.2d 1044, 1048 (8th Cir.1980) (same); *Ellis v. Reed*, 596 F.2d 1195, 1197–1200 (4th Cir.1979) (same). The totality of the circumstances standard had its origin in *Jenkins v. United States*, 380 U.S. 445, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965). In reversing a conviction obtained after the judge told the jury it was required to reach a verdict, the Supreme Court stated, "[u]pon review of the record, we conclude that in its context and under all the circumstances the judge's statement had the coercive effect attributed to it." *Id.* at 446, 85 S.Ct. at 1060. *See Lowenfield v. Phelps*, 484 U.S. 231, 237, 108 S.Ct. 546, 550, 98 L.Ed.2d 568 (1988) ("Our review of petitioner's contention that the jury was improperly coerced requires that we consider the supplemental charge given by the trial court 'in its context and under all the circumstances.' ") (quoting *Jenkins* ).

3. If this were a federal case and therefore subject to our supervisory powers as well as to the requirements of due process, the trial judge's first inquiry into the numerical division of the jury would have required reversal. *Brasfield v. United States*, 272 U.S. 448, 47 S.Ct. 135, 71 L.Ed. 345 (1926). Since *Brasfield* 's per se rule rests on the supervisory power, it does not apply in federal habeas review. *Lowenfield v. Phelps*, 484 U.S. at 239–40 & n. 3, 108 S.Ct. at 551–52 & n. 3 (1988); *Locks*, 703 F.2d at 406.

4. Before dismissing the jury for the weekend, the state trial court in *Locks* asked the jury:

"I say, just on a numerical basis only without telling me how many for one side or how many for another, can you give me the standing of the jury at the last ballot."

*Locks*, 703 F.2d at 405 n. 1.

ing it was moving in one direction, expressing his approval of that progression, and telling the jury to continue its deliberations, the trial court effectively instructed the jurors to make every effort to reach a unanimous verdict. In view of the disclosure after the second impasse that only one juror remained in the minority and the trial court's implicit approval of the "movement" toward unanimity, the court's instruction to continue deliberating until the end of the day sent a clear message that the jurors in the majority were to hold their position and persuade the single hold-out juror to join in a unanimous verdict, and the hold-out juror was to cooperate in the movement toward unanimity.

■ Both counsel reflected an awareness of the risk of coercion. After the first impasse, defense counsel noted his concern; after the second, defense counsel requested a mistrial and the government acquiesced. A single vote stood between defendant and conviction. In such a case "the most extreme care and caution were necessary in order that the legal rights of the defendant should be preserved." *Burton v. U.S.*, 196 U.S. 283, 307, 25 S.Ct. 243, 250, 49 L.Ed. 482 (1905). The trial court's failure to counter-balance the implication of its questions and comments by instructing the hold-out juror not to surrender his or her sincere convictions strongly supports the conclusion that the jury was impermissibly coerced to render a unanimous verdict. *See Jones v. Norvell*, 472 F.2d 1185, 1186 (6th Cir.1973).[5]

■ We conclude from all the circumstances that the defendant was denied a fair trial. In reaching this conclusion, we do not question the practice of California judges to ask the jury its numerical division after an impasse. We conclude, however, that under established due process standards, the comments and conduct of the trial court in this case crossed the line between neutral inquiry and coercive instruction.

Because we simply apply the well-established "totality of the circumstances" test, *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), does not apply.

REVERSED.

KOZINSKI, Circuit Judge, dissenting:

The majority has made a bad situation worse. In its earlier opinion, it merely held that "our *Allen* charge cases are relevant." 12 F.3d 1474, 1477 (9th Cir.1993). Today, it invents a whole new doctrine—the "de facto *Allen* charge." Maj. op. at 980. According to the majority, "the court's instruction to continue deliberating until the end of the day sent a clear message that the jurors in the majority were to hold their position and persuade the single hold-out juror to join in a unanimous verdict, and the hold-out juror was to cooperate in the movement towards unanimity." *Id.*

With all due respect to my colleagues, this is sheer phantasy. What happened here is *nothing* like giving an *Allen* charge, where the trial judge explicitly exhorts jurors to try to achieve unanimity. The idea that we can piece together a de facto *Allen* charge from a trial judge's questions and comments, none of which exhorts the jury to do anything at all, is far more novel and far more dangerous than what the majority said the last time around. *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), is clearly implicated.

For these reasons, and those stated in my earlier dissent, *see* 12 F.3d at 1479–85, I

5. When a trial court gives an *Allen* charge, it "is essential in almost all cases to remind jurors of their duty and obligation not to surrender conscientiously held beliefs simply to secure a verdict for either party." *United States v. Mason*, 658 F.2d 1263, 1268 (9th Cir.1981). A trial court's failure to give such a cautionary instruction weighs heavily in favor of the conclusion that the defendant's right to a fair trial and impartial jury has been violated. *See United States v. Bonam*, 772 F.2d 1449, 1450 (9th Cir.1985); *Mason*, 658 F.2d at 1268.

At oral argument the state seemed to suggest California law precluded such an admonition. On the contrary, the California Supreme Court has approved supplemental instructions reminding jurors not to surrender their convictions simply because a majority of jurors has taken a different view of the case. *See People v. Sheldon*, 48 Cal.3d 935, 258 Cal.Rptr. 242, 254–56, 771 P.2d 1330, 1343–44 (1989); *People v. Keenan*, 46 Cal.3d 478, 250 Cal.Rptr. 550, 582–88, 758 P.2d 1081, 1113–18 (1988).

continue to believe that the district court's judgment must be affirmed.