# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

———————

No. 96-1458

———————

Michael J. Stallings,          *
                                    *

             Appellant,     *

                                    * Appeal from the United States
     v.                        * District Court for the
                                    * Eastern District of Missouri

Paul K. Delo, Warden,     *
                                    *

             Appellee.      *

———————

Submitted:  November 20, 1996

Filed:   July 8, 1997

———————

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge,
    and BOGUE,* District Judge.

———————

McMILLIAN, Circuit Judge.

    Michael J. Stallings (petitioner), a Missouri inmate serving a prison term of life without parole for first degree murder and other crimes, appeals from a final order

———————

*The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, sitting by designation.

entered in the United States District Court[1] for the Eastern District of Missouri denying his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Stallings v. Delo, No. 4:92-CV-353 (E.D. Mo. Aug. 31, 1995) (adopting the report and recommendation of the magistrate judge). For reversal, petitioner argues that the district court erred in denying relief on his due process claims asserting (1) the jury verdict in his state court criminal trial was coerced and (2) the state trial court's use of defense counsel's erroneous jury instruction on self-defense was a fundamental defect that resulted in a complete miscarriage of justice. For the reasons stated below, we affirm.

## Background

The facts underlying petitioner's criminal conviction are briefly summarized as follows. Petitioner and his ex-wife, Donna Stallings, divorced in 1985. Both before and after the divorce, petitioner was abusive toward Donna Stallings. On May 25, 1987, Donna Stallings was returning to her house with her sister, Brenda Abshier, and two friends, when petitioner forced his way into the house and threatened them. Afterward, Donna Stallings and Abshier were too afraid to stay at the house. The next day, Abshier and a friend, Rob Smith, entered Donna Stallings' house to pick up some belongings. Upon entering, they heard a sound upstairs. Smith went to investigate, carrying a pocketknife. Petitioner shot and killed Smith, then came downstairs and shot and seriously wounded Abshier. He then shot and wounded himself.

In December 1989, petitioner was tried in Missouri state court on charges of first degree murder, armed criminal action, assault, and second degree burglary. During the trial, petitioner testified on his own behalf. He claimed that he shot Smith in self-defense. He alleged that Smith came after him with a knife, at which point he found

---

[1]The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

a rifle and shot Smith. The trial lasted five days. In giving its jury instructions, the trial court read an instruction on self-defense that was requested by petitioner's defense counsel. On the last full day of trial, the afternoon session began at approximately 1:30 p.m. following a lunch break. At 4:42 p.m., the jury began deliberating. At 2:30 a.m., the jury informed the trial court that they were deadlocked, eleven-to-one, on the issue of self-defense. The jury foreperson told the trial court that they "tended to have a stalemate." The trial court read Missouri's standard Allen[2] charge, or "hammer" charge, and the jury returned for further deliberations. At 4:20 a.m., the jury sent the trial court a note asking for clarification of the instructions. After the clarification was given by the court, defense counsel moved for a mistrial, stating "I question whether or not they are becoming worn down physically and mentally as a result of deliberating this late into the evening, and I suggest to the Court that they are unable to arrive at a decision." Petitioner's motion for a mistrial was denied. The jury resumed their deliberations and, at 5:20 a.m., returned a verdict of guilty on all counts. Petitioner was sentenced to life imprisonment without the possibility of parole and additional consecutive and concurrent sentences.

Petitioner filed a direct criminal appeal. He also filed a motion for post-conviction relief, for which he was appointed separate counsel. His motion for post-conviction relief was denied, and he appealed. His direct criminal appeal and his appeal from the denial of post-conviction relief were consolidated by the Missouri Court of Appeals, which affirmed his conviction and sentence and affirmed the denial of post-conviction relief. State v. Stallings, 812 S.W.2d 772 (Mo. Ct. App. 1991).

Petitioner filed the present habeas action in federal district court pursuant to 28 U.S.C. § 2254, asserting a total of thirty-four claims for habeas relief. The case was

---

[2]Allen v. United States, 164 U.S. 492 (1896).

referred to a magistrate judge,[3] who recommended that the petition be denied.  Stallings v. Delo, No. 4:92-CV-353 (Mar. 15, 1995) (report and recommendation) (hereinafter "slip op.").  The district court adopted the magistrate judge's report and recommendation and denied the petition.  Id. (Aug. 31, 1995).  This appeal followed.

### Discussion

Petitioner appeals the district court's denial of habeas relief on two of his thirty-four original claims.  He first argues that the district court erred in failing to hold that the circumstances surrounding the jury's deliberations coerced the jury into returning a guilty verdict, in violation of his due process rights under the Fourteenth Amendment.

In reaching the conclusion that petitioner was not entitled to habeas relief on this claim, the magistrate judge noted that petitioner had presented this claim to the Missouri Court of Appeals in his direct criminal appeal and the state appellate court had rejected it on the merits.  Slip op. at 19-20 (quoting State v. Stallings, 812 S.W.2d at 776). The magistrate judge then reasoned as follows:

> The Missouri Court of Appeals carefully considered [the claim that the verdict was coerced], petitioner's principal claim on appeal.  The Court noted that "[i]n order to establish an abuse of discretion it must be shown that, based upon the record of what was said and done at the time of trial, the verdict of the jury was coerced."  State v. Stallings, 812 S.W.2d at 776 (citation omitted).  The Court continued,
>> [a]pplying this well-established standard we can find no abuse of discretion here.  The jury clearly continued to inquire of the court and made neither complaints of fatigue nor a request for an

---

[3]The Honorable Terry I. Adelman, United States Magistrate Judge for the Eastern District of Missouri.

-4-

> opportunity to rest. The court indicated that it
> was not obvious that the jury was unable to arrive
> at a decision. Defendant's [i.e., petitioner's]
> own counsel, when objecting to the submission of
> the hammer instruction, suggested that the jury be
> allowed to reach a verdict. Shortly after
> defendant's counsel first requested a mistrial, he
> stated that the issue was moot because the jury
> was still questioning at that time. The lack of
> coercive effect of the hammer instruction is shown
> by three hours of deliberation after its
> submission. The record clearly demonstrates that
> the trial court did not abuse its discretion.

> Id. at 777. A factual finding by the [Missouri] Court
> of Appeals, such as its determination that the verdict
> was not coerced, is entitled to a presumption of
> correctness. Sumner v. Mata, [449 U.S. 539, 545-47
> (1981)]. The undersigned finds that the circumstances
> surrounding the verdict in petitioner's trial do not
> suggest a fundamental miscarriage of justice.
> Accordingly, [this claim] should be dismissed.

Slip op. at 19-20.

Petitioner argues that, although the facts relevant to this due process claim are generally undisputed, the issue of whether those facts give rise to a finding of a due process violation is in dispute. He maintains, and we agree, that the ultimate issue of whether a constitutional violation has occurred is subject to our de novo review. However, he further argues that, because the controlling issue before the district court involved the application of constitutional law to the facts of the case, the district court erred in affording the § 2254(d) presumption of correctness to the Missouri Court of Appeals' conclusion that the jury's verdict was not coerced. On this particular point, we disagree. Turning to the merits of his due process claim, petitioner notes the facts that the jury deliberated almost continuously for thirteen hours, that they went without sleep for over twenty hours, and, after the foreperson indicated that the jury was deadlocked eleven-to-one at 2:30 a.m., the trial court read them the standard Missouri

<u>Allen</u> charge.[4]  These factors, he argues, had the cumulative effect of unduly pressuring the holdout juror and, thus, coercing the guilty verdict. Brief for Appellant at 11-12 (citing <u>Jiminez v. Myers</u>, 40 F.3d 976, 980-81 (9th Cir. 1993) (per curiam) (<u>Jiminez</u>) (reversing the district court's denial of habeas relief upon concluding that the state trial court's questions and admonitions to the jury unduly pressured the holdout juror by indicating the court's approval and encouragement of the jury's movement toward a unanimous verdict), <u>cert. denied</u>, 116 S. Ct. 63 (1995)). Therefore, he concludes, the district court erred in denying him habeas relief on this due process claim.

We hold that the magistrate judge properly presumed correct the Missouri Court of Appeals' finding that the jury's verdict was not coerced. Our case law indicates -- consistent with Supreme Court precedent -- that a state court's finding that jury coercion did not occur is the type of finding of fact to which the § 2254(d) presumption applies.  <u>See Prewitt v. Goeke</u>, 978 F.2d 1073, 1075-77 (8th Cir. 1992) (<u>Prewitt</u>) (citing <u>Rushen v. Spain</u>, 464 U.S. 114, 120 (1983) (per curiam)).  In <u>Prewitt</u>, the petitioner argued that the jury had been coerced into reaching a guilty verdict as a result

---

[4]In his brief, petitioner also relied upon the assertion that the jury was deprived of food for approximately fifteen hours.  Brief for Appellant at 11-12.  Petitioner first argued "[t]he record fails to indicate that the jurors were allowed to eat between 1:30 p.m. on Friday when final arguments began and 5:20 a.m. the next morning."  <u>Id.</u> at 9 (footnote omitted).  Petitioner then inferred "the jurors were not only required to deliberate for many hours without sleep, <u>they were also required to go more than 12 hours without food</u>."  <u>Id.</u> at 14 (emphasis added).  At oral argument, however, the state identified a reference in the record, made by petitioner's defense counsel, to a "food break" taken by the jury at approximately 9:00 p.m. on the night of the deliberations. <u>See</u> Transcript of Hearing on Motion for a New Trial, at 1221 (Respondent's Exhibit D) ("[t]hey [the jury] had a food break at about nine o'clock that night").  Thereafter, in rebuttal, petitioner's counsel maintained that the jury's verdict was coerced based upon the duration and timing of the deliberations and the use of the <u>Allen</u> charge, irrespective of whether or not the jury took a food break at 9:00 p.m. on the night of their deliberations.

of the bailiff's ex parte statement to the jury, "the Judge says try harder," which was made without the trial court's authorization. Id. at 1075. After the jury returned a guilty verdict, the petitioner moved for a new trial on the ground that the bailiff's statement had a coercive effect and violated her due process rights. Id. In denying the petitioner's motion for a new trial, the state trial court found that there was nothing to support the conclusion that the jurors had in fact been coerced into reaching a guilty verdict. Id. at 1075-76. The state trial court's findings were affirmed on appeal. Id. at 1076. The petitioner filed a petition for a writ of habeas corpus in federal district court, where she reasserted her due process argument (among other related constitutional claims). In concluding that she was not entitled to relief, the district court relied on the state court's finding that the bailiff's ex parte communication did not have a coercive effect on the jury. Id. On appeal, this court affirmed as follows:

> The Supreme Court has addressed the issue of deference to state court findings on ex parte communications with the jury and held that "[t]he substance of the ex parte communications and their effect on juror impartiality raise questions of historical fact entitled to this [28 U.S.C. § 2254(d)] presumption." It is a short step to extend this holding from determinations of juror impartiality to determinations of juror coercion. . . . [T]he factual issue of whether jurors were coerced into a decision by ex parte communications "must be determined, in the first instance, by state courts and deferred to, in the absence of 'convincing evidence' to the contrary, by the federal courts." The district court did not err in applying section 2254(d) in the present case.

Id. at 1076-77 (citations omitted).

In the present case, the magistrate judge similarly and correctly applied the presumption of correctness to the state court of appeals' finding that the jury was not coerced into reaching a unanimous verdict, even though they had deliberated almost continuously for thirteen hours, had not slept for over twenty hours, and had been read the Allen charge after the foreperson indicated at 2:30 a.m. that the jury was at a

stalemate.  See id. at 1076 ("[t]he section 2254(d) presumption of correctness frees the federal courts in habeas corpus actions from the responsibility of retrying factual issues that are more aptly determined by state courts in the first instance"); see also Sumner v. Mata, 449 U.S. 539, 545-47 (1981) (§ 2254(d) presumption of correctness applies to factual determinations made by state courts of competent jurisdiction, including state trial courts and state appellate courts).

Additionally, although we do not necessarily agree with the Ninth Circuit's reasoning and holding in Jiminez, we find that case to be, in any event, distinguishable from the present case.  In Jiminez, 40 F.3d at 980, the jurors on two separate occasions indicated to the state trial court during their deliberations that they had reached an impasse.  Each time, the trial court asked whether there had been "movement" on the jury, and, each time, the foreperson indicated that the division had moved closer to unanimity (in all, from seven-to-five, to eleven-to-one).  Id.  Each time, the judge responded to such information by encouraging the jury's "movement" and sending the jury back for further deliberations.  Id.  In concluding that a due process violation had resulted from the totality of the circumstances, the Ninth Circuit explained:

> We conclude from all the circumstances that the defendant was denied a fair trial.  In reaching this conclusion, we do not question the practice of California judges to ask the jury its numerical division after an impasse.  We conclude, however, that under established due process standards, the comments and conduct of the trial court in this case crossed the line between neutral inquiry and coercive instruction.

Id. at 981.  In other words, the Ninth Circuit in Jiminez focused on whether the particular procedures employed by the state trial court were inherently coercive, thus violating the petitioner's due process rights.  By contrast, the due process issue in the present case turns on whether the jury was in fact coerced.  In the present case, the Missouri Court of Appeals conclusively found that the verdict had not been coerced,

taking into account the issues of jury fatigue and the use of the Allen charge.  State v. Stallings, 812 S.W.2d at 777.  Petitioner has not presented convincing evidence to the contrary.  We therefore hold that the district court, in adopting the reasoning of the magistrate judge, did not err in presuming correct the Missouri Court of Appeals' finding that the verdict was not coerced.  In light of that finding, we further hold that the district court did not err in concluding, as a matter of law, that petitioner's due process rights were not violated as a consequence of the circumstances surrounding the jury's deliberations.

Petitioner's second claim on appeal is based upon the state trial court's use of an erroneous jury instruction on self-defense, which had been requested by petitioner's own defense counsel.  Petitioner argues that the district court erred in denying him habeas relief because the use of the erroneous instruction "'constitute[d] a fundamental defect that resulted in a complete miscarriage of justice or so infected the entire trial as to deprive [petitioner] of a fair trial.'"  Brief for Appellant at 17 (quoting Berrisford v. Wood, 826 F.2d 747, 752 (8th Cir. 1987), cert. denied, 484 U.S. 1016 (1988)); see also Frey v. Leapley, 931 F.2d 1253, 1255 (8th Cir. 1991) (same).

The magistrate judge recommended denial of relief on this claim on two separate grounds.  First, the magistrate judge reasoned that "the Missouri Court of Appeals resolved [this] claim[] based on adequate and independent state procedural grounds."  Slip op. at 17 (citing Coleman v. Thompson, 501 U.S. 722, 729 (1991)).  The magistrate judge further reasoned that this claim had been procedurally defaulted and petitioner had not shown either cause or prejudice to overcome the default.  Id. at 18.  We agree.

To begin, petitioner defaulted on the federal constitutional claim in the state trial court because his attorney was the one who tendered the instruction.  Moreover, although petitioner raised a state law claim based on instructional error in his direct appeal, he did not assert a related federal due process claim.  The Missouri Court of

-9-

Appeals thus only considered the prejudicial effect of the erroneous instruction under the state law standard.  See State v. Stallings, 812 S.W.2d at 778.  Petitioner has not shown cause and prejudice or actual innocence to overcome his procedural default.  The district court did not err in denying petitioner relief on this due process claim based upon instructional error.

## Conclusion

For the reasons stated above, we affirm the district court's denial of the petition for a writ of habeas corpus.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.