**UNITED STATES of America,
Plaintiff—Appellee,**

v.

**Trayvonne MITCHELL, aka Tray,
Defendant—Appellant.**

**No. 03–50059.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 8, 2004.

Decided Dec. 30, 2004.

Heidi L. Rummel, Esq., Brian M. Hoffstadt, Esq., USLA—Office of the U.S. Attorney, Criminal Division, Los Angeles, CA, for Plaintiff–Appellee.

Gail Ivens, Esq., Glendale, CA, for Defendant–Appellant.

Before: B. FLETCHER, NOONAN, and PAEZ, Circuit Judges.

## MEMORANDUM *

Defendant-appellant Trayvonne Mitchell was convicted of several crimes relating to his involvement in planning and executing a series of bank robberies and attempted bank robberies in southern California during 1995 and 1996. On this direct appeal, he attacks his conviction on multiple grounds and challenges his sentence under *Blakely v. Washington*, — U.S. —, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we affirm the conviction. Because of the sentencing issues, we stay the issuance of the mandate

of our decision pending the Supreme Court's decisions in *United States v. Booker*, 375 F.3d 508 (7th Cir.2004), *cert. granted*, — U.S. —, 125 S.Ct. 11, 159 L.Ed.2d 838 (Aug. 2, 2004), and *United States v. Fanfan*, 2004 WL 1723114 (D.Me. 2004), *cert. granted*, — U.S. —, 125 S.Ct. 12, 159 L.Ed.2d 838 (Aug. 2, 2004).

### A. Sixth Amendment Right to Retained Counsel of Choice

■ Mitchell first claims that the trial court violated his Sixth Amendment right to retained counsel of choice by denying his morning-of-trial motion to fire his retained counsel. When a court denies a defendant's motion to substitute counsel, the Ninth Circuit generally reviews the court's decision by looking to three factors: (1) the timeliness of the motion, (2) the adequacy of the court's inquiry into the conflict, and (3) the extent of the conflict between client and counsel. *United States v. Moore*, 159 F.3d 1154, 1158–59 (9th Cir. 1998). This test generally applies to substitutions involving retained as well as appointed counsel. *See, e.g., United States v. Prime*, 363 F.3d 1028, 1035–36 (9th Cir. 2004) (motion to replace *appointed* counsel with *retained* counsel); *Bland v. Cal. Dep't of Corrections*, 20 F.3d 1469, 1474–75 (9th Cir.1994) (motion to replace *retained* counsel with *appointed* counsel), *overruled on other grounds, Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir.2000) (en banc). The only exception to the application of the three-part test is for situations in which the defendant seeks to substitute retained counsel and timeliness is not a problem; in such cases, the inquiry and conflict factors are irrelevant. *United States v. Torres–Rodriguez*, 930 F.2d 1375, 1380 n. 2 (9th Cir.1991), *overruled on other grounds, Bailey v. United States*, 516 U.S. 137, 142–

---

\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

43, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). Though Mitchell argues that the three-part test should not apply because he sought to fire retained counsel, the weight of Ninth Circuit authority favors the application of the three-part test to *all* counsel-substitution motions—whether involving retained counsel or not—except those involving defendants seeking to switch to retained counsel well before trial.[1]

Under the three-part test, Mitchell's claim fails. First, Mitchell made his motion on the morning trial was scheduled to begin. As the trial court observed at the time of Mitchell's motion, "75 jurors are waiting, literally, in the wings to come in and be examined and sworn." Though this factor alone is not dispositive, we have generally found day-of-trial substitutions to be untimely. *See Torres–Rodriguez,* 930 F.2d at 1380–81 (citing cases).

Second, the court's inquiry was adequate. The Ninth Circuit has instructed that a court "must conduct an inquiry adequate to create a sufficient basis for reaching an informed decision." *D'Amore,* 56 F.3d at 1205 (citation and internal quotation marks omitted). In Mitchell's case, the court's inquiry was reasonable. The trial judge patiently inquired as to the reasons for Mitchell's dissatisfaction and encouraged Mitchell to be candid by reassuring him that he should not be afraid of upsetting the judge by complaining about his attorney. The judge prompted Mitchell several times to articulate his reasons for wanting a new attorney. When Mitchell's explanation revealed that he was upset based on expectations that were unrealistic (for example, expecting his attorney to try to impeach government witnesses before trial), the judge tried to explain why the decisions his attorney was making were reasonable ones. Overall, the transcript reveals a judge who was patient and thorough in eliciting Mitchell's reasons for dissatisfaction.

Finally, there was no indication from either Mitchell or his attorney of an irreconcilable conflict or breakdown in communication between them. Other than Mitchell's concerns about specific actions he expected his attorney to have taken, Mitchell's understandable panic at the moment of trial seemed to derive mainly from the severity of the charges he was facing, not conflict with his attorney.

As all of the elements of the three-part test support the ruling of the trial judge, we conclude that Mitchell's Sixth Amendment rights were not violated when his motion to substitute counsel was denied.

**B.  Improper Prosecutorial Argument**

■ Mitchell's second claim is that the prosecutor shifted the burden of proof with his rebuttal closing argument characterizing Mitchell's conduct as inconsistent with that of an "innocent person." The prosecutor argued:

> Innocent men. Mr. [Defense Attorney] talks about that. Innocent men don't refuse handwriting exemplars, ladies and gentlemen. Innocent men don't write letters to witnesses telling them to perjure themselves. Innocent men don't testify on the stand, and accuse everybody of lying but them.

"[C]omments intended to highlight the weaknesses of a defendant's case do not

---

1.  A few cases have suggested more robust protection for retained counsel of choice, *see, e.g., United States v. Lillie,* 989 F.2d 1054 (9th Cir.1993), *overruled on other grounds, United States v. Garrett,* 179 F.3d 1143, 1145 (9th Cir.1999) (en banc); *United States v. D'Amore,* 56 F.3d 1202 (9th Cir.1995), *overruled on other grounds, Garrett,* 179 F.3d at 1145, but the bulk of authority in our circuit favors general application of the three-part test regardless of the appointed/retained distinction.

shift the burden of proof to the defendant where the prosecutor does not argue that a failure to explain them adequately requires a guilty verdict and reiterates that the burden of proof is on the government." *United States v. Vaandering*, 50 F.3d 696, 701–02 (9th Cir.1995). Here, the prosecutor's argument did not shift the burden of proof to the defense. In discussing what "innocent men don't" do, the prosecutor implied only that Mitchell was not innocent, not that he had the burden to prove that he was. Moreover, the prosecutor explicitly discussed the "guilt beyond a reasonable doubt standard" elsewhere in his rebuttal argument. Mitchell's burden-shifting claim therefore fails.

## C. Jury Coercion and Other Irregularities

▇ Mitchell's third claim is that the verdicts were tainted by coercive jury instructions and other irregularities that occurred during and after the jury's deliberations. The most significant of Mitchell's arguments under this heading relates to the judge's response to the unusual verdict form initially returned by the jury: instead of responding "guilty" or "not guilty" to each charge, the verdict form provided the numerical division of the jury on each question (for example, "12 Guilty" or "3 Guilty, 9 Not Guilty"). When presented with this form, the judge commended the jury for their thorough work but made clear that further deliberations might be necessary. After further discussion with the attorneys, the trial judge decided to accept the jury's partial verdict, which included guilty verdicts for Mitchell on three counts. The judge then explained to the jury that their verdicts had to be unanimous and sent them back to deliberate. The jury subsequently returned one more guilty verdict against Mitchell.

"In assessing the coerciveness of a supplemental instruction, we look to the form of the jury charge, the period of deliberation following the charge, the total time of deliberation, and other indicia of coerciveness or pressure." *United States v. Cuozzo*, 962 F.2d 945, 951 (9th Cir.1992).

The circumstances present in this case indicate a lack of coercion. In the instruction prior to the return of the final verdict, the judge was merely correcting the jury's misunderstandings about the initial instructions. Though the judge did indicate that unanimity was required, he did so only to explain to the jury what type of verdicts were legally cognizable, not to suggest that any jurors were expected to reconsider their views in order to reach a verdict. *Cf. Jiminez v. Myers*, 40 F.3d 976, 980 (9th Cir.1993) (defining a charge under *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), as one in which the trial court "instructs the jurors to work towards unanimity and the minority to reexamine its views"). "If you are unable to reach a verdict," the judge told the jury, "then say so."

The jury continued to deliberate for a whole day before reaching any more verdicts, and asked to review additional testimony—both signs of rational and uncoerced deliberation. *See United States v. Ajiboye*, 961 F.2d 892, 894 (9th Cir.1992). Out of the four charges against Mitchell that were left unresolved on the first verdict form, the jury managed to return a verdict on only one of them. This highly selective verdict-rendering also suggests the lack of coercion. *Cuozzo*, 962 F.2d at 952.

Mitchell makes much of the fact that the court knew the numerical divisions when it gave its first instruction to continue deliberations. This factor, while relevant in many cases, does not make a difference here: it could hardly be said that with

majorities favoring conviction on some counts and acquittal on others, the judge was directing his unanimity instruction at any particular jurors. *See Ajiboye*, 961 F.2d at 894.

Mitchell also objects to the judge's initial response to the numerical verdict form. The judge said: "I know you've been patient. You have certainly worked very hard seeking a fair and proper and just—more importantly here, a just resolution of the case." Mitchell argues that the court's commendation of the jury for their hard work was an implicit affirmation of the guilty verdicts rendered so far. We disagree. Taken in context of the judge's receipt of the unusual jury form, the judge's comment appears to be nothing more than encouragement given to a well-meaning jury that the judge realizes he must send back to deliberate further.

Mitchell next claims his conviction was tainted by the transmission of jury notes by the foreman's son after the foreman forgot his notes at home. After learning of this incident, the judge and attorneys appropriately questioned the foreman, who said that his son had read him the notes and nothing more. We therefore find no evidence of outside influence and reject this claim. *See Traver v. Meshriy*, 627 F.2d 934, 941 (9th Cir.1980).

Finally, Mitchell assigns error to the court's failure to poll the jury until all the verdicts were in. This claim is squarely foreclosed by *United States v. Portac, Inc.*, 869 F.2d 1288, 1297 (9th Cir.1989).[2]

## D. Ineffective Assistance of Counsel

Mitchell's fourth claim is that he suffered ineffective assistance of counsel be-

cause defense counsel failed to move for a mistrial after learning that jurors had seen through a blacked-out portion of a letter admitted in evidence after redaction. We generally disfavor addressing ineffective assistance of counsel claims on direct appeal, except where the record is sufficiently developed or the Sixth Amendment violation is obvious. *United States v. Lillard*, 354 F.3d 850, 856 (9th Cir.2003).

Neither exception applies to Mitchell's case. The record before us simply does not permit us to engage in the fact-intensive, multi-factor inquiry necessary to evaluate whether a claim of jury exposure to extrinsic evidence (the basis for the mistrial motion Mitchell argues his lawyer should have filed) would have had any merit. *See Prime*, 363 F.3d at 1037–38. Therefore, in accordance with our general rule, we decline to address Mitchell's ineffective assistance of counsel claim on this direct appeal.

## E. Sentencing Issues

Mitchell also challenges various aspects of his sentence as unconstitutional under *Blakely v. Washington*, — U.S. —, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) and *United States v. Ameline*, 376 F.3d 967 (9th Cir.2004).[3]

After reviewing the record, we agree that we would be required to vacate Mitchell's sentence under *Ameline*. However, we are satisfied that Mitchell will not shortly begin serving the portion of his sentence implicated by *Blakely* and *Ameline*. Therefore, in accordance with *United States v. Castro*, 382 F.3d 927 (9th Cir.2004), we will withhold the issuance of

---

**2.** Mitchell's claim that jury coercion resulted from the judge's handling of two jurors who complained of high blood pressure is meritless and requires no discussion.

**3.** Mitchell argues in the alternative that, even if *Blakely* is inapplicable, certain sentence enhancements he received were nonetheless improper. We need not consider these arguments at this time.

the mandate pending the Supreme Court's decisions in *United States v. Booker*, 375 F.3d 508 (7th Cir.2004), *cert. granted,* —— U.S. ——, 125 S.Ct. 11, 159 L.Ed.2d 838 (Aug. 2, 2004), and *United States v. Fanfan*, 2004 WL 1723114 (D.Me.2004), *cert. granted,* —— U.S. ——, 125 S.Ct. 12, 159 L.Ed.2d 838 (Aug. 2, 2004).

With respect to Mitchell's conviction itself, we affirm.

**AFFIRMED IN PART. The clerk shall stay the issuance of the mandate until further order of the court.**

---

* This panel unanimously finds this case suitable for decision without oral argument. See Fed. R.App. P. 34(a)(2).

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.