Filed 2/22/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KORI MUHAMMAD,<br><br>    Defendant and Appellant. | 2d. Crim. No. B322899<br>(Super. Ct. No. F17902482)<br>(Fresno County) |

Here we hold that allowing a jury to deliberate during the COVID pandemic is not coercive and does not deprive a defendant of the due process of law.

A jury convicted appellant Kori Muhammad of one count of first degree murder (Pen. Code, §§ 187, 189),[1] three counts of second degree murder (§ 187, subd. (a)), four counts of attempted murder (§§ 187, subd. (a), 664), one count of shooting at an occupied vehicle (§ 246), and one count of being a felon in possession of a firearm (§ 29800, subd. (a)(1)).  The jury found true allegations that appellant used a firearm during each of the crimes (§12022.53, subds. (b), (c), & (d)), committed multiple

---

[1] All further statutory references are to the Penal Code.

murders (§ 190.2, subd. (a)(3)), and committed three of the four murders because of race (§ 190.2, subd. (a)(16)). The trial court sentenced appellant to a total determinate term of 61 years in prison plus an indeterminate term of 145 years to life.

Appellant contends the trial court deprived him of due process by coercing the jury to deliberate during the COVID pandemic. There was no jury coercion here and we affirm the judgment.

FACTS AND PROCEDURAL HISTORY

Appellant murdered four people during a 2017 shooting spree in Fresno. The People charged him with first degree murders and initially sought death penalty. Defense counsel conceded appellant committed the crimes but claimed he did so while suffering from symptoms of paranoid schizophrenia, including auditory, visual, and olfactory hallucinations. His trial took place over 31 days in February, March, and April of 2020.[2]

Defense experts testified how mental illness skewed appellant's perception of his environment and caused him to fixate on racial tensions. Appellant testified and described how shooting white people was part of his divine, preordained mission to establish "a kingdom of infinite peace and progress."

Appellant's trial occurred during the COVID pandemic. The trial court directed jurors to sit farther apart and to isolate themselves as much as possible when they returned home each day after trial. When the defense rested on March 17, the trial court ordered jurors to return for closing argument on March 19 and assured them it would secure a spacious room for

---

[2] The trial court initially suspended the criminal case against appellant pursuant to Penal Code section 1368. It found him competent to stand trial in January 2018.

2

deliberations.  Counsel and the trial court agreed to distribute an anonymous questionnaire gauging jurors' willingness to proceed during the perceived health crisis.  All of the jurors responded that they preferred to finish the trial.  Statewide court closures, however, required the trial court to halt deliberations after just one day.

Deliberations were suspended for a month.  The trial court communicated with jurors by telephone and email during this time.  When deliberations resumed on April 20, the jury requested read-backs of testimony from five witnesses and asked the trial court three questions about the verdict forms.  One of these questions prompted the court to give an additional instruction, CALCRIM No. 3515, which directed the jury to consider each count against appellant separately.

Jurors told the bailiff on April 20 they had reached verdicts on some counts but could not agree on others.  The trial court directed them, through the bailiff, to send a note stating how many of the counts remined undecided.  An hour later they reported reaching verdicts on all counts and requested a fresh set of verdict forms to replace the ones they had "scribbled" on while deliberating.  The trial court took this opportunity to correct typographical errors in the originals.  The jury foreperson filled out the new verdict forms.  The verdicts were announced but the trial court ordered them back to deliberations when one juror stated during polling that the verdicts were "not what we discussed."  A short time later they returned with corrections noted on three of the attempted murder counts.  These corrections were favorable to appellant.  The trial court polled each juror a second time and confirmed the verdicts.

Appellant withdrew his plea of not guilty by reason of insanity.  The People withdrew its request for the death penalty.

3

DISCUSSION

Appellant contends the trial court deprived him of due process by "insisting" the jury continue deliberating during the initial outbreak of COVID pandemic. He argues 1. the trial court failed to consider how anxiety may have interfered with jurors' ability to deliberate and might have justified their release from duty altogether and 2. then compounded the problem by treating April 30 as a hard deadline to reach verdicts. Appellant cites jurors' struggles with jury instructions and verdict forms as showing they were operating under "intense pressure" amounting to coercion. We do not agree.

The authorities cited by appellant involve *Allen* charges (*Allen v. United States* (1896) 164 U.S. 492 [41 L.Ed 528]) in which the court instructs a "deadlocked" jury to work toward unanimity and urges the minority to consider the majority's views. (See, e.g., *Lowenfield v. Phelps* (1987) 484 U.S. 231, 235 [98 L.Ed. 2d 568, 575] [polling of deadlocked jury and charging them "to consider each other's views . . . with the objective of reaching a just verdict" did not coerce jury into subsequent verdict of death]; *Jiminez v. Myers* (9th Cir. 1993) 40 F.3d 976, 981 [trial court "crossed the line between neutral inquiry and coercive instruction" by polling jury three times and impliedly approving their movement toward unanimity].) The trial court gave no *Allen* charge here because the jury did not "deadlock." Deliberations stopped because of the COVID pandemic. After reconvening, jurors reported difficulty reaching verdicts on some counts but resolved their divisions quickly and without trial court intervention.

We are not persuaded the trial court coerced jurors by holding an immutable deadline over their heads. It assured them finishing trial "[did not] override your health and well-being and concerns about your health." The trial court responded as follows

4

when a juror asked whether proceedings would continue past April 30: "I'm just about to send you back in to order you to pick up your deliberations right where you left off. Please take your time, whatever time you feel is necessary. We're here. We're still, believe it or not, within that schedule that we talked to you about. So, um, we're doing fine. I don't want you to feel you need to rush in any way."

Appellant describes the proceedings below as "a shambles" and having gone "off the rails" because of the pressure placed on the parties and jury. We are not persuaded by this hyperbole. There was no "hard deadline" of April 30. And the verdicts were reached 10 days before that. Appellant's case required verdicts on four counts of murder, four counts of attempted murder, two firearms-related felonies, and special allegations relating to nine of the ten counts. A few of the jury instructions and verdict forms contained errors that were quickly corrected. The issues identified during jury polling were likewise addressed promptly. These facets of the instant proceedings are not remarkable in a case of such complexity.

With considerable and thoughtful regard for the jurors' well-being during the COVID pandemic, the trial court did the best job it could. We cannot conceive of any further efforts the trial court could have undertaken. We commend it for its handling of this serious proceeding at a serious time.

DISPOSITION

The judgment is affirmed.

CERTIFIED FOR PUBLICATION.


                              YEGAN, J.

We concur:


GILBERT, P. J.


BALTODANO, J.

Jonathan B. Conklin, Judge
Superior Court County of Fresno

_____

Kyle Gee, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans, and Jessica C. Leal, Deputy Attorneys General, for Plaintiff and Respondent.